160 So.2d 46 (1963)
TRI-COUNTY PRODUCE DISTRIBUTORS, INC., a Florida corporation, Appellant,
v.
NORTHEAST PRODUCTION CREDIT ASSOCIATION, Appellee.
No. E-4.
District Court of Appeal of Florida. First District.
October 31, 1963.
Rehearing Denied November 27, 1963.
Coxe & Stephens, St. Augustine, for appellant.
Angus W. Harriett, Palatka, for appellee.
WIGGINTON, Judge.
This suit in equity was instituted by appellee, Northeast Production Credit Association, against A.B. Campbell and wife, *47 Evelyn M. Campbell, and appellant Tri-County Produce Distributors, Inc., a Florida corporation. The complaint alleges that Northeast is the owner by assignment of two mortgages given by the Campbells to one E.B. Bowles, the first of which was executed on July 13, 1954, and the second of which was executed on December 6, 1956. Each of these mortgages encumbers the homestead of the mortgagors, and was duly recorded in the Public Records of St. Johns County.
The complaint further alleges that Northeast is the owner also of a mortgage given it by the Campbells dated October 7, 1957, which mortgage likewise encumbers the Campbells' homestead, together with certain farm lands and equipment used in connection with their farming operation, and was duly recorded in the records of the county. It is alleged that although a rider attached to and made a part of the mortgage document and the promissory note were executed by Evelyn M. Campbell, her signature thereon witnessed by two subscribing witnesses, and her acknowledgment duly taken by a notary public, through mutual mistake and inadvertance she failed to affix her signature to the mortgage document itself in the space provided for that purpose. The complaint alleges that all three mortgages held and owned by Northeast are in default and the sums secured thereby are past due and unpaid.
The complaint further alleges that Tri-County is the owner and holder of a subsequent mortgage given it by the Campbells dated July 1, 1960, encumbering the homestead and farm property described in Northeast's mortgage of October 7, 1957. It is alleged that this mortgage is subordinate to the lien of the mortgages held by Northeast. The complaint prays for a decree reforming the October 7, 1957 mortgage held by Northeast by including thereon the signature of defendant Evelyn M. Campbell, and that as reformed this, together with the earlier mortgages held by Northeast through assignment from Bowles, be foreclosed.
The Campbells filed an answer to the complaint generally admitting the allegations of the complaint, but denying that the mortgage of October 7, 1957, sought to be reformed and foreclosed was executed by Evelyn M. Campbell, or that her signature was omitted from the mortgage through mutual mistake and inadvertance. Tri-County answered the complaint alleging a lack of knowledge as to most of the allegations contained therein; specifically denying that Evelyn M. Campbell executed the mortgage of October 7, 1957, and denying that her signature was omitted therefrom through mutual mistake or inadvertance. The answer further alleges that title to the homestead of the Campbells described in the October 7, 1957 mortgage is vested in them as an estate by the entirety and that Tri-County had no notice, either actual or constructive, that the fee interest of Evelyn M. Campbell in the homestead and her dower interest in the farm lands were encumbered by Northeast's mortgage of 1957. Tri-County affirmatively alleges that it holds a valid and existing mortgage lien against the homestead and farm lands of the Campbells described in Northeast's mortgage, and that its lien is prior and superior in dignity to the 1957 mortgage held by Northeast as regards the fee interest of Evelyn M. Campbell in the homestead, and her dower interest in the farm lands.
During the course of the proceedings the deposition of the Campbells was taken by plaintiff. Their sworn testimony affirmatively establishes that it was the agreement of the parties that the October 7, 1957 mortgage given to Northeast be executed both by A.B. Campbell and wife, Evelyn M. Campbell, and that it was through mutual mistake or oversight that Evelyn M. Campbell's signature was not affixed to the mortgage document at the time the mortgage transaction was closed.
Northeast filed a motion for summary decree supported by affidavits of its general manager and the original mortgagee, E.B. Bowles. These affidavits tend to *48 support the allegations of the complaint and to establish the delinquent amounts due on all three mortgages.
In opposition to the motion Tri-County filed an affidavit executed by its manager containing facts which, if true, clothed it with status of a good faith purchaser for value of its mortgage lien against Evelyn M. Campbell's fee interest in the homestead and her dower interest in the farm lands owned by her husband, without actual notice of Northeast's mortgage lien on such interest by virtue of its mortgage dated October 7, 1957. On the day of the hearing upon the motion for summary decree each of the Campbells filed before the court their opposing affidavits stating that Evelyn M. Campbell's signature was not omitted from Northeast's 1957 mortgage through mutual mistake or inadvertence. No explanation was made as to the reason for the conflict between the deposition testimony and affidavits of these parties. The chancellor was therefore justified in disregarding the averments of the affidavits in his consideration of the motion for summary decree.
After oral argument before the court an order was entered by the chancellor in which he found that the mortgage of October 7, 1957, was duly and regularly executed by the Campbells and that it was through mutual mistake and inadvertence that Evelyn M. Campbell's signature was not affixed to the mortgage at the time the transaction was closed. The court therefore ordered the mortgage reformed so as to include the signature of Evelyn M. Campbell. In the light of this order and the other proofs before the court, a summary final decree of foreclosure was entered finding that the equities of the cause are with plaintiff Northeast, and ordering the Campbells to pay the amount found by the decree to be due on all three mortgages held by Northeast, together with costs and attorneys fees, within the time fixed by the decree or that in default thereof the property described in the mortgages be sold by the clerk of the court. It is from the final decree of reformation and of foreclosure and sale that this appeal is taken by Tri-County.
The Campbells joined in the appeal as parties appellant but their appeal was dismissed by this court on motion of appellee Northeast for failure to perfect their appeal in accordance with the rules of this court.[1] By failing to perfect their appeal and suffering a dismissal thereof, the Campbells have accepted the conclusion reached by the chancellor that in view of Mrs. Campbell's deposition testimony admitting that she intended to be a party to the Northeast mortgage, her subsequent affidavit filed in opposition to the motion for summary decree averring that her signature was not omitted from the mortgage because of mutual mistake or inadvertence should properly be disregarded.
Tri-County presents several points on appeal, only two of which we find it necessary to answer.
It is first contended that in a suit to reform a written conveyance of real estate a court of equity has no authority to decree reformation on the ground of mutual mistake by ordering that the omitted signature of a grantor or mortgagor be added to the written instrument, particularly when a portion of the property described in the instrument consists of a homestead, fee title to which is vested in the party whose signature is alleged to have been omitted by reason of the alleged mutual mistake.
It is appellant's contention that the Constitution and laws of this state relating to alienation of homesteads render null and void any instrument purporting to convey or encumber such property unless the instrument is jointly executed by the husband and wife strictly in accordance with the *49 requirements of law.[2] Appellant contends that since the mortgage in question was not signed by Evelyn M. Campbell, it is a nullity insofar as it purports to encumber the homestead to which she and her husband hold title as an estate by the entirety. It is appellant's further position that while a court of equity may reform a written instrument to express the true agreement of the parties, it may not because of alleged mutual mistake create a contract where none theretofore existed, and that by ordering the omitted signature of Evelyn M. Campbell added to the 1957 mortgage held by Northeast, the decree creates a contract where none theretofore existed. It is on this premise that Tri-County contends the court was without authority to reform Northeast's mortgage insofar as it purports to create a lien on Evelyn M. Campbell's dower interest in the farm lands owned by her husband and described in said mortgage.
It is an inherent power of a court of equity to order a written instrument reformed in such manner as to cause the instrument to reflect the true agreement of the parties when the terms of the agreement have not been clearly expressed in the instrument because of the mutual mistake or inadvertence.[3] The foregoing principle is recognized in this state even though it is conceded that the court lacks power to make a new contract for the parties containing terms which were not part of the agreement when the instrument was executed.[4]
The decisions from this and other jurisdictions are replete with instances in which written instruments have been reformed on the ground of mutual mistake so as to include land erroneously omitted; to delete land which had been erroneously included; to add signatures of witnesses and seals to instruments which were inadvertently omitted. Research reveals only one decision, however, which squarely confirms the power of a court of equity to reform a mortgage by adding the signature of a mortgagor inadvertently omitted thereform by reason of mutual mistake so as to evidence the true agreement of the parties.[5]
We conclude that the final decree herein is supportable on other equitable principles, so we treat the order purporting to reform the mortgage as immaterial to the result and hold that the decree of foreclosure was properly entered. In so holding we rely on the rule that the judgments and decrees of trial courts should not be reversed where the conclusion is correct though founded on an erroneous reason. And we now discuss the principles of law, as applied to the facts in this case, supporting the conclusion we have reached.
The second point for consideration on this appeal is whether the appellant, not having unequivocal direct notice of appellee's claim under the mortgage in dispute, was by the recordation of said mortgage nevertheless charged with the duty to make further inquiry for the purpose of ascertaining appellee's superior interest, if any, in the subject property, under penalty of being estopped to assert a lien, later in point of time of recordation, superior to that of the appellee. The opening paragraph of the 1957 mortgage in question recites: "In consideration of and to secure all existing indebtedness of A.B. Campbell and Evelyn M. Campbell, his wife, borrower (whether one or more) to Northeast Production Credit Association, lender, and all advances that may be made by lender to borrower within ten years from the date of this mortgage * * *, undersigned *50 has granted, bargained, sold and conveyed, and by these presents, does hereby grant, bargain, sell and convey unto lender the following described property:." It is noted from the above-quoted recital that the mortgagors are merely referred to as the "undersigned," and not by their individual names. Following the opening paragraph is a description of all property intended to be encumbered, which includes all crops growing on the thereafter described real estate; certain described real estate then being rented and cultivated by the mortgagors; the farm lands and the homestead consisting of a lot in St. Augustine. Under the designation of "other personal property" appear the words "See attached rider for additional property covered hereby." Immediately beneath the last quoted recital is a separate typewritten page stapled to the face of the mortgage and secured by tape which reads as follows: "This rider is attached to and made of a security instrument executed by the undersigned to the Northeast Production Credit Association under date of October 7, 1957." Following this introductory clause is a schedule of farm equipment and other personal property. At the bottom of the rider appears the signatures of A.B. Campbell and Evelyn M. Campbell, each of which is under seal and witnessed by two subscribing witnesses. Evelyn M. Campbell's signature to this rider constitutes a clear acknowledgment that the document thereby executed is intended to be attached to and made a part of a security instrument dated October 7, 1957, which she acknowledges is executed by her. The security instrument referred to in the rider is of course the mortgage bearing date of October 7, 1957, which is the subject matter of this proceeding. The rider is so affixed to the face of the mortgage as to cover the bottom of the first page of the instrument to which it is affixed. On the bottom of the first page beneath the rider appears the signature of A.B. Campbell duly witnessed by two subscribing witnesses, but does not bear the signature of Evelyn M. Campbell. The mortgage does, however, contain an acknowledgment in the statutory form in which the notary public certified that A.B. Campbell and his wife, Evelyn M. Campbell, personally known to him to be the individuals described in and who executed the foregoing instrument appeared before him and acknowledged that they executed the same freely and voluntarily for the purposes therein expressed. The acknowledgment further certifies that Evelyn M. Campbell, wife of A.B. Campbell, on a separate and private examination acknowledges that she executed the instrument freely and voluntarily, etc. This mortgage was duly recorded in the public records of St. Johns County long before Tri-County's mortgage was executed by the Campbells.
From the foregoing facts it is apparent that the chancellor held as a matter of law that Northeast's recorded mortgage was sufficient to constitute constructive notice of all the facts and circumstances recited therein, which facts were sufficient to place a reasonable person on inquiry as to whether Evelyn M. Campbell was one of the mortgagors described in the mortgage, and whether such interest she may have had in both the real and personal property described therein was subjected to the lien of the mortgage in accordance with the express terms and provisions thereof. Also implicit in the decree is the conclusion that such inquiry would have disclosed that Evelyn M. Campbell was a joint mortgagor whose interest was subject to the lien of the mortgage in question.
The recording statute of this state provides that no conveyance, transfer or mortgage of real property or of any interest therein, nor any lease for a term of one year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law.[6]
*51 This statute has been construed to mean that the proper record of a conveyance affords constructive notice of its contents. If a conveyance does not include the interest of all the owners of the property, the record of conveyance is notice only as to the interest included in it.[7]
It is equally settled in this jurisdiction that the record of an instrument is constructive notice to creditors and subsequent purchasers not only of its own existence and contents, but of such other facts as those concerned with it would have learned from the record if it had been examined and inquiries suggested by it, duly prosecuted, would have disclosed, and if, in investigation of a title, a purchaser, with common prudence, must have been apprised of another right, notice of that right is presumed as a matter of implied actual notice.[8]
It has likewise been held that if the circumstances of the transaction are such, or the record indications are of such a nature that inquiry outside of the record becomes a duty, then the failure to make such inquiry in order to determine the true status of the title to the property described in the recorded instrument would constitute a negligent omission.[9]
We share the view adopted by the chancellor that the facts recited in Northeast's recorded mortgage, coupled with the signatures affixed and the acknowledgments taken thereto, were sufficient to place a prudent person on injuiry as to whether Evelyn M. Campbell actually joined her husband in the execution of the mortgage with the intent to encumber whatever interest she had in both the real and personal property described therein. Under the circumstances, Tri-County was charged with the duty of making such inquiry as would satisfy a reasonable and prudent person as to the extent of Evelyn M. Campbell's participation in the mortgage loan transaction with Northeast if Tri-County intended to claim the position of a bona fide purchaser for value under its mortgage from the Campbells. By its negligent omission to make such inquiry as the circumstances suggested, Tri-County is now estopped to contend that it had no knowledge of the fact that Evelyn M. Campbell was a party to Northeast's mortgage.
From the foregoing, it necessarily follows that even though Tri-County had no actual knowledge of Evelyn M. Campbell's interest in the property described in Northeast's mortgage was encumbered by the lien thereof, Tri-County is charged as a matter of law with constructive notice of such fact and therefore does not occupy the status of a bona fide purchaser for value without notice under its subsequent mortgage from the Campbells. This being true, no genuine issue of any material fact was presented by the pleadings, exhibits, depositions, and affidavits before the court, and the entry of summary decree in favor of Northeast was therefore proper.
The appellant having failed to demonstrate that the chancellor clearly erred as a matter of law in his decree ordering foreclosure and sale of the property described in the delinquent mortgages held by Northeast, the decree appealed is affirmed.
STURGIS, C.J., and RAWLS, J., concur specially.
STURGIS, Chief Judge (concurring specially).
I concur in affirming the decree appealed on the premise that the failure of the defendant *52 mortgagors to pursue this appeal is a tacit acknowledgment on their part that the chancellor exercised a lawful discretion in concluding, in accordance with the testimony given by them on depositions taken by appellee, that the wife's signature was in fact omitted from the subject mortgage by mutual mistake and inadvertence; conversely, that he did not err in rejecting the diametrically opposite statements contained in their affidavits filed in resistance of plaintiff's motion for summary decree. In this posture the decree of foreclosure has become final to the extent that as between the defendant wife and the plaintiff mortgagee (the appellee), her interest is inferior to the mortgage lien. It follows that the sole issue on this appeal is whether appellant or appellee has the superior lien under the mortgages involved, and I am persuaded that well established principles of estoppel give that position to appellee's mortgage, thus affording a correct basis for the decree of foreclosure.
I wish to emphasize, however, that in my opinion the facts do not permit reformation of the mortgage in question by way of adding the wife's signature thereto, the only purpose of which would be to demonstrate that it was in fact executed by her. The conclusion reached by WIGGINTON, J., in which I concur, is bottomed on the doctrine of estoppel. I am aware that such basis for affirmance produces the same practical result in this case as reformation of the character I abjure, but there are fundamental distinctions between relief in equity as afforded under the doctrine of equitable estoppel and that afforded by way of reformation of written agreements. The latter is generally founded on mutual mistake and inadvertence while the former generally rests on broad principles of right and justice which need not be labored for the purposes of this concurrence.
RAWLS, Judge (concurring specially).
In my opinion the sole issue in this cause is whether or not the October 7, 1957, mortgage as executed by the Campbells and as recorded, gave notice of Northeast's superior interest in same.
As detailed in the majority opinion the Campbells admittedly executed the instrument termed a "rider" which was an integral part of the mortgage. It necessarily follows that Evelyn M. Campbell executed the mortgage which was duly witnessed by two subscribing witnesses and her acknowledgment duly taken by a notary public. She did not affix her signature in the space provided on the bottom of the printed form of the mortgage; however, I can find no provision in the statutes or the case law of this jurisdiction which mandatorily requires the execution of a mortgage in a particular space provided therefor. To paraphrase the words of Judge Sturgis in a different type case but analogous situation, the blank line appearing on the printed form for the mortgagor's signature does not have the efficacy of excluding the actual signature of one who signs as mortgagor at some other place than that provided,[1] particularly where as in the instant case another conspicuous composite place was provided for the signatures of both mortgagors and the witnesses. In the instant cause Evelyn M. Campbell executed the instrument termed a rider (which in my opinion actually is a misnomer in that the instrument was attached to and a part of the mortgage at the time of her executing same) which clearly stated "This rider is attached to and made a part of a security instrument executed by the undersigned to the Northeast Production Association under date of October 7, 1957". This instrument was subject to recording and was duly recorded, and upon its being spread upon the public records *53 of St. Johns County, Florida, it then constituted notice to all the world of the interest so claimed and held by Northeast in the property so described.
In the instant cause one examining the records had to go no further than to read that which was properly spread upon the records to be apprised of the fact that Northeast held a mortgage on the property clearly and accurately described therein. The purpose of the recording statutes is to afford to one the opportunity of giving notice to all the world of their interest in the particular subject matter. This was done in the instant cause and Tri-County was charged with knowledge of Northeast's interest in this land upon the subject mortgage being spread on the records of St. Johns County, and the mortgage it accepted subsequent thereto was as a matter of law inferior to the interest of Northeast.
NOTES
[1] Tri-County Produce Distributors, Inc., et al. v. Northeast Production Credit Association (Fla.App. 1962), 147 So.2d 587.
[2] Constitution of Florida, Art. 10, Sec. 1, F.S.A.; New York Life Ins. Co. v. Oates et ux., 122 Fla. 540, 166 So. 269.
[3] Old Colony Ins. Co. v. Trapani (Fla. App. 1960), 118 So.2d 850; Shell Creek Land Co. v. Watson et al., 101 Fla. 172, 133 So. 621.
[4] Crosby v. International Investment Co., Inc. (Fla.App. 1958), 101 So.2d 15.
[5] Sumner, as administratrix, etc. v. Rhodes et al. (1828), 14, 134.
[6] F.S. Section 695.01, F.S.A.
[7] Tyler v. Johnson et al., 61 Fla. 730, 55 So. 870.
[8] Zaucha et ux. v. Town of Medly et al. (Fla. 1953), 66 So.2d 238; Sapp v. Warner, 105 Fla. 245, 141 So. 124, 143 So. 648.
[9] Chatlos et ux. v. McPherson (Fla. 1957), 95 So.2d 506.
[1] Cf. In re Lomineck's Estate, 155 So.2d 561 (Fla.App.1st, 1963), where one signing as scrivener of a will was held to be a witness although not signing in the place provided for the signatures of witnesses since he had witnessed and attested the execution of the will and subscribed thereon.