304 A.2d 661.

JOHN C. DAVIES *et ux. vs.* ROYAL LITTLE *et al.*
THE DUNES CORPORATION *vs.* JOHN C. DAVIES *et ux.*

MAY 16, 1973.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.  We have consolidated two appeals taken by John C. Davies and his wife, Caroline, from two judgments entered in the Superior Court after a nonjury trial. In one action, the Davies are plaintiffs in a civil action where they seek specific performance and damages from the defendants, Royal Little and the Dunes Corporation, because of an alleged conspiracy by the defendants to deprive the plaintiffs of an opportunity to exercise an option to purchase a parcel of real estate.  The other action is an eviction proceeding in which the Davies were ordered to vacate the real estate which is the subject of this dispute.

The Dunes Corporation is a Rhode Island business corporation.  It owns a large recreational facility located in the northeasterly section of the town of Narragansett on the shore of the Atlantic Ocean.  The facility consists of such summertime attractions as bathhouses, beach cabanas, dining areas having a magnificent waterfront view, tennis courts and a swimming pool.  This property is the headquarters for the Dunes Club, a nonbusiness corporation. Members of the club in their use of the corporation's premises are able to enjoy a variety of activities including a dip in the surf, a sip at the bar, a taste of some excellent cuisine, a dance to the accompaniment of some of the better-known musical aggregations or the opportunity to go out onto the clubhouse veranda and gaze in wonderment at the ocean's majestic surge.  The corporation's board of directors and the club's board of governors are identical. The directors' and the governors' meetings are held simul-

taneously. The minutes of both organizations are kept in one minute book.

On December 21, 1950, the Dunes Corporation and several owners of real estate abutting the Dunes complex entered into an agreement placing restrictions on all of their properties. The defendant Little was one of the signatories. The agreement was duly recorded in the Land Evidence Records of Narragansett on January 10, 1951. The portion of the agreement which is pertinent to the controversy before us is found in paragraph Fifth. It reads as follows:

> "*Fifth*: Should the said American Associates, Inc., Royal Little, Thomas H. Quinn desire to sell their premises on said tract hereinbefore described, said Dunes Corporation shall first have the option to buy the same at whatever price the other parties hereto shall be willing to elect to sell their said premises, provided the said Dunes Corporation, its successors or assigns, exercises said option to buy within twenty (20) days after the receipt of written notice from any of the parties hereto, their heirs, executors, administrators, successors or assigns, that a sale of said property is desired and about to be made at the price to be stated therein, and no such sale shall be made at the time at a different price than that so stated."

The agreement also provided that its restrictions and conditions were to be binding on all the parties and were to be incorporated into all future conveyances of the subject real estate. In February, 1967, Thomas H. Quinn and his wife conveyed a portion of the so-called "Riverview" parcel to the Dunes Corporation. Four months later, in June, 1967, the corporation deeded this property to Little. Both deeds were duly recorded and each instrument contained a specific statement that it was subject to the December, 1950 agreement. Subsequently, in February, 1968, the corporation transferred the remaining portion of Riverview to Little by a recorded deed which contained a right

of refusal clause whose language was identical to that found in the December, 1950 agreement.

Actually "Riverview" is the name given to a two-story house which is located on the disputed parcel. The house consists of a living room, dining room, dinette, kitchen, numerous bedrooms, quarters for domestic help, and an attached two-car garage with additional living quarters over the garage. Later, on August 31, 1968, Little leased the Riverview premises to the Davies for a period of two years at a monthly rental of $200. The lease contained the following option to purchase:

> "Said Lessees are hereby granted an option to purchase said premises for Forty Thousand Dollars ($40,-000) at any time during the term hereof. Said option shall be exercised by notification in writing to Lessor, and the closing and payment in full of said purchase price shall take place within thirty (30) days of said notification. The obligation to pay rent shall cease as of the closing. The conveyance to the Lessees shall be by Bargain and Sale Deed conveying all of Lessor's interest in said premises. It shall include a right of first refusal in The Dunes Corporation to purchase said premises in the event Lessees desire to sell same at any time in the future."

In November, 1969, Little wrote to Mr. Davies and asked him whether he intended to take up the option. On December 7, 1969, Davies replied that he hoped that the "appalling" mortgage interest rate would be reduced before August, 1970, but in any case, he wrote, negotiations would commence before that time so that the option would be properly exercised. On May 20, 1970, Little wrote a letter to the Board of Governors of the Dunes Club stating that since the club had the first right of refusal, the board should be advised that come August, 1970 he planned to sell Riverview to the Davies for $40,000 unless the club exercised its right to purchase the property. A copy of this letter was sent to the Davies. Two days later, the club's presi-

·dent acknowledged receipt of Little's letter. Mr. Davies received the copy of Little's May 20 communication because on May 27 he wrote Little and informed him of his shock and surprise by the mention of the "Dunes Club's" right of first refusal.

Later, on June 1, the president of the Dunes Club[1] wrote to ·Little and advised him that the club had voted to exercise its option. Subsequently, on June 13, 1970, Little conveyed "Riverview" to the Dunes Corporation. Tax stamps attached to the deed show a purchase price of $40,000. The Davies seek to have this deed set aside. The Dunes Corporation seeks to have the Davies removed from Riverview.

In attempting to void the 1970 conveyance made to defendant corporation, the Davies have apparently abandoned their accusation of conspiracy but argue in the alternative: (1) that the corporation has waived its right of first refusal; and (2) that Little's May 20, 1970 notice is a nullity.

The plaintiffs' waiver theory is based upon the fact that at the annual meeting of the stockholders of the Dunes Corporation held on August 31, 1968, Little, in reporting on the various sales of homes that had taken place within what might be described as the Dunes compound, told the group that "Mr. Davies has an option to buy" Riverview. The Davies argued that this statement triggered the 20-day period during which the club had to signify its intent to purchase Riverview. We do not think so.

Strictly speaking, so far as Little was concerned, the Davies' option did not become operative until they gave him

---

[1]The offices of president of the Dunes Club and president of the Dunes Corporation are held by one person. In a case where similarity of names plays an important role, it should be noted that the president's last name is Davis. At times, it is difficult not to confuse Davis with the plaintiffs' last name, Davies.

written notice sometime during the two-year term of the lease of their intent to buy Riverview. There is absolutely no evidence in the record that at any time during the term of the lease the Davies ever gave the requisite notice. In fact, the Davies' 1969 comments about the rising cost of mortgage money are an indication that they were content to wait until almost the expiration of the lease before making any effort to obtain the necessary financing. On the other hand, the Dunes Corporation was not obligated to exercise its right to refuse until Little gave it written notice that a sale of Riverview *"is desired and about to be made."* (emphasis added) There is nothing in the record to suggest that in August, 1968, the sale of Riverview by Little to the Davies was imminent.

The Davies have described Little's May, 1970 notice as "technically invalid" because it was given to the club and not the corporation.[2] We think that there is such a community of interest between the Dunes Corporation and the Dunes Club with their common governing bodies that, for the purpose of the notice called for in the December, 1950 agreement, there was a merger of corporate identities so that Little's notice to the club was also notice to the corporation. Moreover, since this particular notice provision was for the benefit of the corporation, the corporation could waive the requirement of a written notice. *Safeway System, Inc. v. Manuel Bros.,* 102 R. I. 136, 228 A.2d 851 (1967).

There is no evidence of any conspiracy between Little and the corporation and we affirm the trial justice's ruling that defendant corporation properly exercised its right of first refusal.

We now turn to the Davies' efforts to obtain a money

---

[2] If technicalities were to be observed, defendant corporation would argue that since the notice mandated by the 1950 agreement has never been sent, it still has the opportunity to exercise its right of first refusal.

502

judgment against Little because of his alleged fraudulent failure to disclose to them the corporation's right of first refusal.

Mr. Davies works in the upper executive echelon of one of our state's collegiate institutions. The attorney who drew the lease told the trial justice that Mr. Davies asked him the reason why any future sale by them of Riverview was subject to the right of first refusal. This witness said he told Davies that the corporation's right was part of the chain of title and the reference in the lease preserved that right. Little testified that he had never expressly told the Davies that their option to buy was subject to the corporation's first refusal right because he believed that the lease's reference to the right made its existence obvious.

The Davies must be charged with constructive notice of the corporation's right of first refusal. As noted earlier, the December, 1950 agreement which created the right was recorded in the Land Evidence Records of Narragansett. Such a recordation gives "constructive notice to all persons of the contents" of the recorded document. General Laws 1956 (1969 Reenactment) §34-13-2. The Davies are aware of the recording statute but claim it is not applicable because of the holding in *Hunt* v. *Barker*, 22 R. I. 18, 46 A. 46 (1900).

In *Hunt* it was held that a person to whom a false representation as to the ownership of land is made, who in relying on its truth has acted to his loss, is not precluded from maintaining an action for deceit because he might have ascertained the true state of the title by an examination of the land records. The Davies can take no comfort from the *Hunt* case.

The trial justice, in reviewing the evidence adduced on this phase of the Davies' complaint, found no fraudulent conduct on the part of Little or his attorney. We will not disturb his findings in this regard. There is nothing in the

record which would prevent the invocation of the recording statute.

The sole remaining issue necessary for our consideration concerns several objections taken to various evidentiary rulings made during the trial. Only one of these objections merits discussion. It concerns an order entered on June 15, 1971 by the trial court directing the Davies to pay the Dunes Corporation the sum of $400 a month for their occupancy of Riverview. This order is still in full force and effect. The trial justice in denying the Davies' attempt to reduce this amount observed that he was familiar with the property and that the $200 monthly rent called for in the lease was a "real bargain." The trial justice's expertise in the field of Narragansett real estate finds no support in the record. There is an absolute absence of any testimony as to what is a reasonable rental for Riverview. Unless the parties can agree, the corporation upon remand shall present competent evidence upon which the trial justice can establish the reasonable value of the Davies' occupancy of Riverview.

Except as modified by this opinion, the plaintiffs' appeals are denied and dismissed.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Doris did not participate.

*Aisenberg & Dworkin, Robert B. Corris,* for John C. Davies et ux., *Tillinghast, Collins & Graham, Peter J. McGinn,* for The Dunes Corporation, plaintiffs.

*Edwards & Angell, Gerald W. Harrington,* for Royal Little, defendant.