**SPEEDY MUFFLER KING, INC.**

v.

**Wendall J. FLANDERS, Director of the Department of Transportation.**

No. 81–569–Appeal.

Supreme Court of Rhode Island.

Aug. 21, 1984.

Albert B. West, Edward P. Manning, Manning, West, Santaniello & Pari, Providence, for plaintiff.

Stephen F. Mullen, Chief Sp. Counsel, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of Wendall J. Flanders, Director of the Department of Transportation (director), from a judgment entered by a justice of the Superior Court permanently enjoining him from interfering with an access driveway constructed by Speedy Muffler King, Inc. (Speedy), for the purpose of ingress to and egress from its business premises. We reverse said judgment. The facts underlying this action as disclosed by the record are as follows.

On September 9, 1959, the State of Rhode Island condemned a large portion of privately owned real estate (including land owned by Alfred J. Gemma, Barbara L. Gemma, and Frank Zabatta) for the purpose of constructing a portion of Interstate Route 95 between Broadway and Washington Street in the city of Providence. As required by the provisions of G.L.1956 § 24–10–6 and § 37–6–14, the director filed on September 11, 1959 a condemnation map (plat No. 1107) and a description and statement of taking. The condemnation statement and the map clearly indicated that this real estate was condemned for the purpose of constructing a freeway, and the map further showed a freeway line abutting that portion of land formerly owned by the Gemmas and Zabatta, which portion had been condemned. A freeway is defined in G.L.1956 (1979 Reenactment) § 24–10–1 as

"a way especially designed for through traffic over which abutters have no easement or right of light, air or access by reason of the fact that their property abuts upon such way."

Section 24–10–3 further deals with the question of easements and access as follows:

"Extinguishment of easements—Regulation of access.—Where an existing highway has been designated as or included within a freeway by the said director, existing easements of access, light or air may be extinguished by purchase or by taking under eminent domain, in accordance with any existing method now exercised by said director in purchasing or taking land for highway purposes. Access to such freeway from any existing highway, road or street may be regulated and restricted by said director. Access to any such freeway from any new highway, road or street shall be subject to the consent and approval of said director."

Consequently, as matters stood in 1959, property, including the subject parcel, was condemned for freeway purposes, and a freeway line was clearly designated by map and statements of taking which had been filed in the records of land evidence in the city of Providence. This fact is established by documentary evidence and is undisputed.

Thereafter, on April 5, 1976, the State of Rhode Island by a deed of the then Di-

rector of Transportation, Robert J. Rahill, conveyed a portion of the condemned property back to the former owners, the Gemmas and Zabatta. This property included land abutting Service Road No. 7. Said deed contained the following restriction:

> "[E]xcepting and reserving therefrom to the Grantor, however, any appurtenant easement of right of light, air and access the purpose of said exception and reservation being to restrict access to the abutting roadway, namely said Service Road No. 7 * * *."

Consequently, the reconveyance specifically excluded a right of access to Service Road No. 7. An amended plat was later filed by the director on May 12, 1976, altering the freeway line formerly established in the original condemnation, to run along the boundary between Service Road No. 7 and the reconveyed premises.

In 1979, a representative of Speedy, William T. Sweetman (Sweetman), who was found by the trial justice to be a real estate expert, examined the property that had been reconveyed to the Gemmas and Zabatta for its suitability as a site for a business operation to be constructed on behalf of Speedy. After examining traffic patterns, he negotiated with the Gemmas and Zabatta an option contract to purchase contingent upon obtaining all necessary permits for the construction and operation of a Speedy facility. Among the permits obtained was one for a curb cut approximately twenty-six feet wide to create a driveway that would provide access from Service Road No. 7 to Speedy's repair premises.

■ Later, the Gemmas and Zabatta conveyed the premises in question to Speedy but did not include in their deed any notice of restriction on the right of access to Service Road No. 7. The permit for the twenty-six-foot-wide driveway had been obtained from the office of Frank A. Tibaldi, Traffic Engineer of the city of Providence.

Tibaldi testified that he was unaware that a freeway line had been established along Service Road No. 7. Otherwise, he would have referred the request to the Director of Transportation. Approval of any such access must be given by the director pursuant to § 24–10–3.

At trial considerable testimony was taken concerning the need of Speedy for access to Service Road No. 7 in order that its business might operate in accordance with its initial expectations. It is undisputed that the subject parcel has access to Carpenter Street on the north and Cottage Street on the south. However, the trial justice determined that because of parking patterns, this access was not adequate to satisfy the needs of Speedy's business. He further found that allowing Speedy's customers access to Service Road No. 7 would cause no significant traffic hazard.

■ The trial justice found specifically that Speedy did not have notice of the freeway line and the limitation of access to Service Road No. 7. In so finding, the trial justice overlooked or misconceived the undisputed evidence of constructive notice. The land evidence records of the city of Providence would have disclosed to any title examiner the existence of the freeway line as a result of the condemnation of September 9, 1959, the reservation of the right of access by the deed to the Gemmas and Zabatta on April 5, 1976, and also the amended plat with the altered freeway line filed on May 12, 1976. The purpose of such constructive notice is to bind subsequent purchasers and all other affected parties by restrictions that are clearly set forth in prior conveyances or other instruments appropriately recorded. *Davies v. Little*, 111 R.I. 496, 502, 304 A.2d 661, 665 (1973); *Case v. Mortgage Guarantee & Title Co.*, 52 R.I. 155, 157, 158 A. 724, 726 (1932); G.L.1956 (1969 Reenactment) § 34–13–2.[1]

---

1. General Laws 1956 (1969 Reenactment) § 34–13–2 by its terms gives the broadest possible effect to constructive notice:

"Recording as constructive notice.—Such record or filing shall be constructive notice to all persons of the contents of such instru-

There is also undisputed evidence in the record that Sweetman on behalf of Speedy had retained an engineer prior to purchase of the subject property and that this engineer drew up a comprehensive survey map in January 1979. The map that was introduced into evidence clearly delineated the location of highway lines and freeway lines as they pertained to the subject property from and after the condemnation of 1959 as well as the altered freeway line established in 1976. Consequently, the existence of this map almost inevitably points to the fact that representatives of Speedy had actual as well as constructive notice of the existence of a freeway line.

In the light of this notice, the trial justice's finding that Speedy was unaware of the freeway line is clearly wrong. His findings that access to Service Road No. 7 would not create a traffic hazard and that Speedy is severely disadvantaged by lack of such access cannot support the judgment. Moreover, a permit purportedly given by the traffic engineer of the city of Providence to breach a freeway line is of no assistance to Speedy since § 24–10–3 clearly provides that any such access "shall be subject to the consent and approval of said director [of transportation]." It is undisputed that no such approval had been obtained.

It should also be noted that the director is limited in granting rights of access by 23 U.S.C.A. § 111 (1966) and regulations contained in 23 C.F.R. § 620.203 (1979) by the requirements that approval for access to a freeway must be obtained from the Federal Highway Administrator. It is also undisputed in the instant case that representatives of the Federal Highway Administrator had specifically challenged the access that had been given to Speedy. It was this challenge and the somewhat vague threats of reprisal made by the federal authorities which initiated the dispute leading to the current litigation.

Since Speedy had both constructive and actual notice of the limitations upon its right of access, relief cannot be granted by a court of equity in creating such a right of access in spite of such restrictions to relieve Speedy from inconvenience in the operation of its business. Neither the director nor the Federal Highway Administrator may be required as a matter of law to deviate from the rights and duties imposed upon them by statute even though a court might come to a different conclusion if it were acting in their capacities.

For the reasons stated, the appeal of the director is sustained. The judgment of the Superior Court is reversed. The papers in the case may be remanded to the Superior Court with directions to enter judgment for the director.

ments and other * * * matters so recorded,

so far as the same are genuine."