In re Michael J. BARNACLE et al.

**GREATER PROVIDENCE DEPOSIT
CORPORATION**

v.

**Michael J. BARNACLE and Sally
E. Barnacle, a.k.a., Sally E.
Lapides.**

In re AMERICAN INVESTCORP AND
DEVELOPMENT COMPANY.

**AMERICAN INVESTCORP
AND DEVELOPMENT
COMPANY**

v.

**RHODE ISLAND CENTRAL
CREDIT UNION.**

No. 92–415–M.P.

Supreme Court of Rhode Island.

April 16, 1993.

John Boyajian, Boyajian, Harrington & Richardson, Edward Avila, Roberts, Carroll, Feldstein & Carroll, Providence, for plaintiff.

Zvi Smith, DSandro–Smith, James Marusak, Gidley, Sarli & Marusak, Deena F. Christelis, Louis Geremia, Providence, for defendant.

## OPINION

FAY, Chief Justice.

The United States Bankruptcy Court for the District of Rhode Island, acting pursuant to Rule 6 of the Supreme Court Rules of Appellate Procedure, has certified to this court two questions of law, together with a statement of facts relevant to the controversy in which the questions arose. The certified questions arise from two distinct fact patterns.

On December 22, 1986, Sally E. Lapides (Lapides) and her husband, Michael J. Barnacle (Barnacle), executed a promissory note in favor of Greater Providence Deposit Corporation to evidence a loan for the purchase of property located in Providence. The note was secured by a mortgage document that was intended and required to be executed jointly by Barnacle and Lapides. Through inadvertence the mortgage was not signed by Lapides. The mortgage was recorded in the Providence land evidence records. On January 9, 1992, Barnacle and Lapides filed a chapter–7 petition in bankruptcy. The trustee in bankruptcy, pursuant to 11 U.S.C. § 544(a)(3) (1989), is deemed to be a bona fide purchaser of the mortgaged property as of the filing of the bankruptcy petition. The United States Bankruptcy Court for the District of Rhode Island certified the following question of law to this court: Whether the failure of one of two joint mortgagors to execute a mortgage document, which instrument is thereafter duly recorded in the appropriate land evidence records, gives constructive notice to a bona fide purchaser five years later?

The second certified question arises from the following facts. On August 2, 1988, American Investcorp and Development Company (AIDC) executed a promissory note in favor of Rhode Island Central Credit Union (RICCU). As security, RICCU accepted a mortgage on condominium unit No. 100 located at 264 Atwells Avenue in Providence. The legal description contained in the mortgage, as recorded, did not reference the specific condominium unit intended to be conveyed but instead described the entire condominium project. On July 10, 1991, AIDC filed a chapter–11 petition in bankruptcy. As a debtor-in-possession, AIDC is deemed to be a bona fide purchaser of the property pursuant to 11 U.S.C. § 544(a)(3). The United States Bankruptcy Court for the District of Rhode Island subsequently certified the following question to this court: Whether the legal description contained in a mortgage deed, which does not describe the particular condominium unit intended to be conveyed but instead describes the entire condominium building, gives constructive notice to a bona fide purchaser of the single condominium unit?

## I

### THE BARNACLE MORTGAGE

■ We must decide whether the mortgage, if defective, although recorded, affords constructive notice to a bona fide purchaser. The general purpose of land-recording statutes is to provide a public record of transactions affecting title to land. When dealing with priority problems, courts must decide whether the emphasis of their decisions should be placed on protecting those who warrant protection, such as a purchaser without notice, or in punishing those who fail to record. Strict adherence to either approach may result in an overly rigid and unforgiving body of applicable law.

■ The definition of constructive notice is not one on which all authorities agree. *See* 5 H. Tiffany, *The Law of Real Property*, § 1284 at 50 (B. Jones ed.1939) (noting that "the cases and textbooks are absolutely lacking in harmony"). Constructive notice has been interpreted as both "record notice" and all notice that is inferred as a matter of law. Because we are analyzing notice derived from the record, constructive notice, as applied in title-priority questions, is

"notice of all claims which are revealed by the record regardless of whether or not [the purchaser] ever looks at the record or ever sees the information contained therein. In other words, notice of all properly recorded claims is inferred, as a matter of law. Indeed, a better label for this type of notice would be 'record notice' or, more specifically, 'notice inferred from the record.'

"[Such an inference] is absolutely necessary for the proper operation of the recording system. Without it a subsequent purchaser could, quite intentionally, avoid any inspection of the record and claim bona fide purchaser status because he or she had not otherwise personally received actual notice of the claim. If such a principle were allowed to exist, there would be no purpose in enacting a statute designed to give notice of land transactions to the public." 6A Powell, *The Law of Real Property*, ¶ 905[1] at 82–40,41 (1991).

General Laws 1956 (1984 Reenactment) § 34–13–2 provides in part: "Recording as constructive notice.—Such record or filing shall be constructive notice to all persons of the contents of such instruments * * *." Section 34–13–2 "by its terms gives the broadest possible effect to constructive notice * * *." *Speedy Muffler King, Inc. v. Flanders*, 480 A.2d 413, 415 n.1 (R.I.1984). "The purpose of * * * constructive notice is to bind subsequent purchasers and all other affected parties by restrictions that are clearly set forth in prior conveyances or other instruments appropriately recorded." *Id.* at 415. In analyzing the meaning of "appropriately" or "properly" (*see* Powell quoted above) recorded, we must review the applicable statutes. General Laws 1956 (1984 Reenactment) § 34–11–1 provides that

"[e]very conveyance of lands * * * by way of mortgage * * * shall be void unless made in writing *duly signed, acknowledged as hereinafter provided*, delivered, and recorded * * * Provided, however, That the same, if delivered, as between the parties * * * or those having notice thereof, shall be valid and binding though not acknowledged or recorded." (Emphasis added.)

General Laws 1956 (1984 Reenactment) § 34–12–1 provides in part that "[a]cknowledgment of any instrument * * * shall be made by all the parties executing the instrument * * *."

The trustee contends that because the mortgage lacks Lapides's signature and the appropriate acknowledgment of the signature, the mortgage is defective and cannot afford constructive notice to a subsequent purchaser. Because this is an issue of first impression, it is necessary to review the rulings of other jurisdictions in this area.

It appears that a clear majority of jurisdictions hold that when an instrument is defective because it lacks a signature, because it is not signed by the appropriate number of witnesses, or because it is not properly acknowledged, although recorded, the instrument does not impart construc-

tive notice. *Connecticut National Bank v. Lorenzato*, 221 Conn. 77, 81, 602 A.2d 959, 961 (1992) (an imperfectly executed instrument "is a nullity and is, therefore, incapable of giving constructive notice[,]" *id.* at 82, 602 A.2d at 962); *see also In re Ryan*, 851 F.2d 502 (1st Cir.1988) (reviewing cases from thirty-four jurisdictions and concluding that as a general rule instruments not properly acknowledged do not provide constructive notice).

Jurisdictions have held that when the defect is cured by an attached rider to the recorded instrument, the instrument does impart constructive notice. *Connecticut National Bank v. Lorenzato*, 221 Conn. 77, 602 A.2d 959 (1992); *Tri–County Produce Distributors, Inc. v. Northeast Production Credit Association*, 160 So.2d 46 (Fla.1963). In *In re Sandy Ridge Oil Co.*, 510 N.E.2d 667 (Ind.1987), the court recognized that recorded, defective instruments do not afford constructive notice but held that an instrument that lacked the signature of the drafter did afford constructive notice. The court concluded that the absence of the drafter's signature, although contrary to an Indiana statute, bore no relationship to the conveyance and thus would not be subject to the majority rule. *See also Bown and Sons v. Honabarger*, 171 Ohio St. 247, 168 N.E.2d 880 (1960). It is necessary to point out that our corrective statute, § 34–11–36, would not be in issue because it is invoked after a period of ten years, and in this case only five years have passed since the recording of the instrument.

Our research has unearthed a line of cases that we find enlightening.

" 'Where an instrument is executed by several parties, the acknowledgment by one is, in the absence of a contrary provision of the statute, sufficient as to its validity and recordability as to him.' * * * Where a real estate mortgage is acknowledged by some mortgagors, but not all, the mortgage is entitled to be recorded and upon recording is constructive notice of the interest of those persons who acknowledged the instrument, and the priorities that are attendant therewith." *Prudential Insurance Co. of America v. Holliday*, 191 Neb. 144, 146, 214 N.W.2d 273, 275 (1974); *see also Keese v. Beardsley*, 190 Cal. 465, 213 P. 500 (1923); *Bell v. Sage*, 60 Cal. App. 149, 212 P. 404 (1922); *People ex rel. Oaklawn Corp. v. Donegan*, 226 N.Y. 84, 123 N.E. 71 (1919); *Rork v. Shields*, 16 Tex.Civ.App. 640, 42 S.W. 1032 (1897).

We find this reasoning to be quite persuasive. When a mortgage is executed by several parties, proper execution by at least one of the parties would evidence that party's interest in the property. The recorded instrument would not be wholly defective as one of the parties would meet the requirements for a valid execution. This would impart notice of an interest in the property.

"[The statute] might be construed as requiring all persons executing an instrument to acknowledge it, but the provisions concerning the recording of instruments must be construed in the light of their purpose, that is, to give notice to subsequent claimants of the acts of prior owners, alienating or incumbering the title. An acknowledged instrument carries with it the proof of its due execution by the person who so acknowledges it." *Keese*, 190 Cal. at 472, 213 P. at 502.

In the case at bar it should be noted that Barnacle executed and acknowledged the mortgage deed. Through inadvertence Lapides did not sign the mortgage instrument, but according to the tenor of the notary public's form of acknowledgment, both Barnacle and Lapides appeared before the notary, were known to him, and acknowledged said instrument to be their free act and deed. Thus, we have one party who executed the instrument acknowledging it and the other party purporting to acknowledge it but having failed to sign. This would seem to meet the requirement of giving constructive notice to one who searched title (or one who should have searched the title) that the named mortgagee had a significant interest in this property.

We are well aware of the majority rule and have reviewed many cases expressing

the belief that a defectively executed instrument does not impart constructive notice. A well-beaten path, although more traveled, is not necessarily the correct or best reasoned one. We are of the opinion that those courts that have rushed into a determination that an instrument not executed by all parties named therein is a nullity have created a forfeiture for no reasonable or necessary purpose. Indeed, the Supreme Court of Indiana·has commented upon this rule both critically and persuasively. The thrust of the

> "argument is that Indiana Courts have for 135 years ruled that documents which were not entitled to be recorded do not constitute constructive notice. The rationale for this rule remains unexplained today, just as it was in 1853. Judges are often called upon to extinguish the substantial property rights of a citizen. Doing so on the basis of a rule for which there appears no basis is especially difficult." *In re Sandy Ridge Oil Co.*, 510 N.E.2d at 671.

"The rule that a recorded defective instrument does not afford constructive notice has long been questioned." *Id.* at 670. If we were to adopt the majority view, a disturbing situation could arise. If there is a valid recording, a failure to search the record does not protect the prospective bona fide purchaser. However, following the majority view, if there is a defectively executed instrument recorded in the proper chain of title, failure to search the record would result in protection whereas actual discovery of the instrument would result in a duty to inquire. Adopting the majority view would result in rewarding a failure to search the chain of title. We would thus be protecting a party that failed to protect itself, most probably resulting in an unfair and an unjust windfall. What legal maxim would be served in penalizing those who search while rewarding those who do not? We find none of any value. "The overriding consideration should be that the instrument would give the purchaser a 'definite and tangible clue, which, if diligently followed up, would ordinarily bring the truth of the matter to light.'" C. Johnson,

*Purpose and Scope of Recording Statutes,* 47 Iowa L.Rev. 231, 241 n.57 (1962).

■ We conclude that a technical deficiency that would be subject to reformation in equity ought not to create a windfall for junior encumbrancers or those who would become bona fide purchasers. A reasonable title searcher, when confronted with this instrument along with its purported acknowledgment, would be placed upon notice to inquire further concerning the validity of the instrument. Such inquiry would establish that the mortgagee had a valid interest in law that could be further perfected in equity. To suggest that such an interest is a nullity because of the missing signature is to exalt form over substance.

The Barnacle instrument was recorded in the proper chain of title and therefore would be readily discoverable by a title search. This is not an instance wherein the instrument was misfiled and could not be discovered, nor was the instrument wholly void of a signature or acknowledgment. The instrument would most assuredly give a purchaser a definite clue about an interest in the property.· Our decision is restricted to a question of notice; and if a prospective bona fide purchaser had searched this title, he or she would have discovered this instrument. This discovery would have put the purchaser on notice of a possible claim.

Limited to the particular facts of this case, we conclude that this instrument, filed in the land evidence records, would impart constructive notice to a subsequent purchaser. We find no sound reasoning in allowing a title searcher to pass by this instrument and claim no knowledge of an interest in the property. Consequently, discovered or undiscovered, this instrument would destroy a purchaser's claim that he or she is bona fide. Therefore we answer the first certified question in the affirmative.

## II

### THE RICCU MORTGAGE

■ Our analysis now turns to whether an error in the description of property in a

mortgage affects the rights of a bona fide purchaser. The RICCU accepted a mortgage on condominium unit No. 100 at 264 Atwells Avenue in Providence. The mortgage, as recorded, describes the entire condominium project in a metes-and-bounds description but does not identify the specific unit. On August 3, 1988, at 10:35 a.m., the mortgage was recorded in the Providence land evidence records in book No. 1858 at page 262. On the same date that the mortgage was executed, RICCU also obtained a "Collateral Assignment of Leases and Rents" (assignment), which was duly recorded in the Providence land evidence records in book No. 1858 at page 262A at 10:37 a.m. The assignment states that the property is secured by a mortgage "with respect to the real property and improvements * * * known as Unit # 100, 265 Atwells Avenue, * * * more particularly described in Exhibit A attached * * * and incorporated by reference * * *." Exhibit A contains the same general metes-and-bounds description contained in the mortgage.

The AIDC seeks refuge in the Rhode Island Condominium Act and its related statutes. Relying on G.L.1956 (1984 Reenactment) § 34–36–14, AIDC first contends that a transfer of title to a condominium must describe the particular unit to be transferred. Section 34–36–14 provides in part: "Descriptions of unit.—Every deed, lease, mortgage or other instrument *may* legally describe a unit by its identifying number * * * and every such description shall be deemed good and sufficient for all purposes * * *." (Emphasis added.)

It is " 'the function and duty of this court to construe statutes' * * * [And] it is our task 'to establish and effectuate the intent of the Legislature.' " *Town of East Greenwich v. O'Neil*, 617 A.2d 104, 108 (R.I.1992). If the language of the statute is " 'clear on its face, then the plain meaning of the statute must be given effect.' " *Caithness RICA Limited Partnership v. Malachowski*, 619 A.2d 833, 836

(R.I.1993). The use of the word "may" in a statute generally connotes a degree of discretion. *Pacheco v. Raytheon Co.*, 777 F.Supp. 1089 (D.R.I.1991). Section 34–36–14 does not prohibit description of the entire premises; therefore, AIDC's reliance on the statute is misplaced. Likewise it is clear that the statute does not mandatorily require identification by the unit number but, as the word "may" connotes, permits such identification. Consequently the metes-and-bounds description, absent identification of the unit number, is not prohibited by the statute.

The AIDC next avers that the mortgage was not recorded in the proper index and thus a reasonable examination of title would not reveal the document. Because this is a condominium mortgage, AIDC argues, the Legislature has mandated that it must be recorded in a condominium index. Next AIDC contends that because of the general metes-and-bounds description, the recorder would record the document in the general index, and AIDC concludes that conducting a search in the condominium index would not result in the document's discovery and consequently could not afford notice to a subsequent purchaser.

We do not agree with AIDC's argument that the mortgage was required to be recorded in a condominium index. Section 34–36–12, as amended by P.L.1987, ch. 431, § 1 provides in part:

"(b) *In addition to the records and indexes now required to be maintained by the recorder*, the recorder *may* maintain an index whereby the record of each condominium project contains a reference to the declaration, each conveyance of, lien against, and all other instruments referring to a unit affected by such declaration, and the record of each conveyance of, lien against, and all other instruments referring to a unit shall contain a reference to the declaration of the property of which the unit is a part." (Emphasis added.)

We do not view § 34–36–12 as controlling.[1] First and foremost the language of the

**1.** The AIDC relies upon an unamended version of G.L.1956 (1984 Reenactment) § 34–36–12.

Public Laws 1987, ch. 431, § 1, amended section (b) of the statute. Prior to this amendment the

applicable section of the statute begins with the phrase "in addition to the records and indexes now required to be maintained." The statute does not abrogate the duty of maintaining a general index or the duty of recording an interest in the general index. Furthermore the statute merely suggests a possible addition to the general index. The statute specifically, and rather clearly, states that the recorder *may* maintain a condominium index. As such, the statute does not mandate a separate recording index or system. Rather it states that an additional condominium index may be maintained by the particular city or town. A purchaser who recorded his or her interest only in the separate condominium index may not be fully protecting his or her interest in the property. In this instance we deem the mortgage to be properly recorded.

Our emphasis now turns to the description in the mortgage.

" '[A] mortgage will not be held void for uncertainty, *even as to third persons*, where by any reasonable construction it can be sustained; *and where the description used furnishes a key* whereby a person, aided by extrinsic evidence, can ascertain what property is covered, such description is sufficient.' " (Emphasis added.) *Caraway Bank v. United States*, 258 Ark. 858, 859, 529 S.W.2d 351, 351–52 (1975).

In following the reasoning of the *Caraway* court, we find that a recorded mortgage would not be ineffective in imparting notice to third parties whereby the description contained in the mortgage furnishes adequate information to aid a third party in identifying the land. Likewise, a properly recorded Massachusetts mortgage describing the premises as "all of our (the debt-

or's) land situated within Hampshire County" was valid to impart notice to a subsequent purchaser. *Hampshire National Bank of South Hadley v. Calkins*, 3 Mass. App. 697, 339 N.E.2d 244 (1975). The *Calkins* court held that the generality in the description of the property was not grounds for treating the mortgage as ineffective. The court concluded that there was sufficient information in the general description of the property to put a subsequent purchaser on notice.

 An obligation is imposed on a purchaser of real property to make a reasonable and diligent search of the records. In this instance the mortgage was properly recorded, and a prospective purchaser undertaking a reasonable title search would have discovered the mortgage. The purchaser would then be on notice of an interest in the land, albeit with a general metes-and-bounds description of the entire condominium project, but a description nonetheless. We are analyzing a much more specific description than "all my land" that the *Calkins* court deemed sufficient to put a purchaser on notice. The purchaser who adequately searched title would be on notice of the information represented in the mortgage. That information could be the key in more adequately defining the land or, in this case, the specific unit number of the condominium. Because this instrument was properly recorded, the purchaser would be bound by the notice it imparts.

Although the general metes-and-bounds description in the mortgage may have been sufficient to aid a purchaser in identifying the specific unit number covered by the mortgage, our analysis need not reach that supposition. One searching the records would literally have the key to the specific identity of the condominium unit at his or

---

relevant section of the statute read, "In addition to the records and indexes now required to be maintained by the recorder, the recorder *shall* maintain an index whereby the record of each condominium project contains a reference to the declaration * * *." (Emphasis added.) The AIDC cites this version of the statute in its memorandum. The amended version of the statute now reads, "In addition to the records and indexes now required to be maintained by the recorder, the recorder *may* maintain an

index whereby the record of each condominium project contains a reference to the declaration * * *." (Emphasis added.) The amended version of the statute took effect on July 1, 1987. The RICCU mortgage was executed on August 2, 1988, and recorded on August 3, 1988; therefore, the amended version of the statute must be applied. Although this amendment is not entirely dispositive of the applicability of the statute, it aids us in determining the intent of the Legislature.

her fingertips and could unlock the resulting information simply by turning one page in the land evidence records. The mortgage that contained the general metes-and-bounds description of the entire condominium project was recorded on page 262. The assignment was recorded on page 262A. The association of the mortgage and the assignment can be further evidenced by the fact that they were recorded two minutes apart. We believe that a reasonable and diligent title search would have uncovered the assignment. The purchaser with notice of the mortgage and the assignment would then have the identity of the specific unit number because both the general metes-and-bounds description and the specific unit number appear in the assignment. Therefore, we hold that the purchaser would have constructive notice of the single condominium unit that the mortgage covered. Consequently we answer the second certified question in the affirmative.

We have reviewed other contentions put forth by AIDC and find that they do not fall within the purview of the certified question. For this reason we do not address those contentions.