CHARLES T. MARSTON AND OTHERS *vs.* EUGENE L. KENYON AND OTHERS.

GILES MANDEVILLE *vs.* THE SAME.

*K* purchased of one party a piece of land with a store upon it, and took of another party a lease for fifty years of a vacant lot next adjoining, both lots having a river frontage on one side and abutting on the same street on the other. *K* removed the division fence, constructed a wharf along the entire river front, erected coal sheds on the vacant lots, repaired the store and used a part of it for an office, and converted the whole into a yard for receiving and

selling coal.   Held that a lien for materials furnished and work done in build-
ing the sheds and repairing the store, under a single contract, covered both
pieces of land as a single lien.

Where a lien for work and materials was filed and recorded as amounting to
$4,270, when the amount actually due was only $1,544, but the error was made
by including certain notes by mistake and omitting certain credits, and there
was no intention to mislead, it was held that the lien was good for what was
actually due, against a mortgagee who had taken his mortgage while the work
and materials were being furnished, and before the certificate of lien had been
filed.

BILLS to foreclose liens for work done and materials fur-
nished in erecting and repairing certain buildings; brought to
the City Court of the city of Hartford.   The cases involving
essentially the same facts were tried together.   The following
facts were found by the court.

The petitioners seek to foreclose liens for materials and
work furnished for certain buildings situated upon certain real
estate owned by E. L. Kenyon, and bounding upon the Con-
necticut River in the city of Hartford.   The real estate con-
sists of two adjoining pieces, one south of the other, on the
west bank of the river, and bounded west by Commerce
street.   The boundaries and description of these pieces are
correctly given in the certificates of lien, which were filed on
the 12th and 13th of January, 1876.   The southern piece is
called the Crosby property.   Kenyon bought it of the heirs of
Thomas K. Brace, in April, 1875, and owns it in fee simple.
A store about forty feet square and three stories high, called
the Crosby store, stands upon this piece.   The northern piece
is called the Kilbourn slip property.   It is owned by the town
of Hartford, and on the 27th of September, 1873, the town
leased it to Kenyon for fifty years.   There were no buildings
upon this piece until Kenyon erected the structure hereafter
to be described.   Kenyon has mortgaged all his rights in both
pieces to the respondents G. B. Linderman & Co., as alleged
in the petitions.   Linderman & Co. appeared to defend in
both suits, but Kenyon made no defence.   The Kilbourn slip
property was a piece of low ground sloping to the river and
used as a landing.   Kenyon filled up the slip and the entire
property above the freshets, and during the summer and fall
of 1875 built upon it a row of coal sheds, seven in number,

extending from a point near the Connecticut river, west about a hundred feet, nearly to Commerce street. He began this work about May 24th, 1875. He also built upon the top of the sheds a railway for moving coal, and at the river a hoist-way for hoisting coal from vessels to the railway. Both pieces he enclosed by fences from the coal-sheds to the Crosby store, and from the store to the river. He fitted up a coal office in one room of the Crosby store, and extended into this office the arm of a platform scale which stood near the store. This office was the only portion of the Crosby store used in the coal business. The rest of the building was used for storage, except one office which was rented for a short time, and upon which Kenyon made slight repairs. When Kenyon had filled up the river front, he built a continuous dock along the entire front, which was finished before May 24th, 1875. The property before these changes were made was not adapted to the coal business, and he made all these improvements for the purpose of transforming the whole into a coal yard. There was no division fence or other boundary between the two lots, and Kenyon used the whole as one coal yard except the Crosby store as above stated.

C. T. Marston & Co. commenced to furnish materials to Kenyon for buildings and repairs upon this property, on May 29th, 1875, and continued from time to time so to furnish, until the 1st day of December, 1875, when they ceased doing so. Mandeville commenced performing labor and furnishing materials for Kenyon, for buildings and repairs upon the property, on the 24th of May, 1875, and continued furnishing labor and materials until the 1st day of December, 1875, when he ceased.

The new buildings and repairs in respect to which these liens were claimed were all erected and made under a single contract between the petitioners respectively and Kenyon; C. T. Marston & Co. were to furnish the lumber, and Mandeville was to perform the labor and furnish other materials, and Kenyon was to pay them severally what the labor and materials should be reasonably worth. No separate account was kept by either petitioner of labor or materials expended upon

each building or each of the two parcels of land. No one requested either of them to keep or render such separate accounts. All of the lumber furnished by C. T. Marston & Co. went into the coal sheds and Crosby store, and none of it into the fences. The liens were filed in each case as single liens upon the entire property.

C. T. Marston & Co. claimed a lien by their certificate for the sum of $1,292.78. The amount actually due them was $1,270.43, with interest from December 1st, 1875. The difference of $22.35 was a mistake caused by including two items of lumber which went to another coal yard, and a small item of interest. Mandeville claimed a lien by his certificate for the sum of $4,270.06. The amount actually due him was $1,544.56, with interest from December 1st, 1875. The difference between these sums, $2,725.50, was caused by mistakenly including the amount of certain notes given by Kenyon, and omitting credits to which he was entitled. Both mistakes were made without fraud or any purpose to deceive. It was not possible to determine from the evidence what amount was expended upon each lot, but of the whole labor and materials furnished by all the petitioners, not over $250 in value was expended upon the southern or Crosby lot.

No building on either lot is appurtenant to the other tract or the buildings thereon, unless, upon the facts found, the law makes it an appurtenance. Kenyon has paid Mandeville more than the whole amout of the expenditures of the latter upon the Crosby lot, and Mandeville has expended upon the Kilbourn slip lot more than the whole amount now due him. Upon the above facts, the petitioners respectively asked the court to hold that they had acquired valid liens each against both tracts and the buildings thereon, as one piece of real estate, and to pass decrees of foreclosure accordingly.

The respondents Linderman & Co. insist that neither Marston & Co. nor Mandeville have acquired a valid lien against the real estate or any part of it.

Upon these facts the cases were reserved for the advice of this court.

*E. Goodman* and *E. B. Bennett,* for the petitioners.

1. The petitioners, under the statute, have acquired a valid lien to the entire property described in their certificates. Gen. Stat., Rev. of 1875, p. 359, sec. 9. The land and the buildings on it are designed for a united enjoyment, and must be treated as a unit. Phillips Mech. Liens, § 202. Under the contract the work of building and repairing was one job. *Bank of Charleston* v. *Curtiss,* 18 Conn., 348. The principle is well established that such quantity of land is subject to the lien as, under all the circumstances, is reasonably necessary and convenient for the enjoyment of the building according to the intention and design of the owner. Phillips Mech. Liens, § 200; *Bank of Charleston* v. *Curtiss,* supra. The record shows that all the land was actually used for one purpose.

2. The buildings having been treated in the contract as one estate, the land on which they stand and is used with them, and which is owned by the same person making the contract, must also be treated as one estate. *Wall* v. *Robinson,* 115 Mass., 430; *Brabazon* v. *Allen,* 41 Conn., 363. That the land was conveyed to the present owner by separate deeds, and that subsequent to the contract to furnish materials the land had been mortgaged in separate pieces; or that the buildings are separate, one standing on each piece, are not such conditions as in this case prevent the lien attaching to the whole property. *Bachelder* v. *Rand,* 117 Mass., 178. That the land is held part in fee and part by lease for term of years is not material. The lien attaches to whatever interest the owner of the building has in the land. *Hooker* v. *McGlone,* 42 Conn., 102; *Fitch* v. *Baker,* 23 id., 569; Phillips Mech. Liens, § 83.

5. The claim of Mandeville is not invalidated by the fact that a larger sum is claimed in his certificate than was actually due. This was not done fraudulently, but by a mistake. No one is injured by it. It is no objection to a person's collecting what is due on a just claim, that by mistake he stated the claim to be more than it was. *Bank of Charleston* v. *Curtiss,* supra.

*G. Collier*, for the respondents G. B. Linderman & Co.

1. The land on which the petitioners claim a lien consists of two separate and adjoining lots, held by the respondent, Kenyon, by different titles, one lot in fee and the other under lease. The work done and material furnished were for building coal sheds on one lot, and for making slight repairs upon a building standing upon the other lot. Of the several thousand dollars expended, only the insignificant sum of $250 was expended upon the Crosby property; but the petitioners claim to hold this lot for the large amount expended upon the Kilbourn slip property. The court below finds that the premises were fitted up to be used as a coal yard, except the Crosby store; but it does not find that any part of the Crosby property was necessary to the convenient use of the coal sheds built upon the Kilbourn slip property. But the court does find that one lot of land was not as matter of fact appurtenant to the other, and that but a very small portion of the building on the Crosby lot, and on which the repairs were made, was used, or intended to be used, in the coal business; and that Marston & Co. furnished no material for use upon the Crosby lot except that used upon the Crosby store. The contract was, in effect, to erect on one lot certain buildings, and to make slight repairs upon a building already erected and standing upon another lot. The statute giving the lien is to be construed with reasonable strictness. *Chapin* v. *Persse & Brooks Paper Works*, 30 Conn., 474. The statute clearly contemplates that each building should be subject to a lien for the work or material done or furnished in its own erection or repair. Gen. Statutes, p. 359, sec. 9; *Larkins* v. *Blakeman*, 42 Conn., 292. This rule is necessary in order to do justice between different claimants. *Chapin* v. *Persse & Brooks Paper Works*, supra. The only distinction between the case at bar and that of *Larkins* v. *Blakeman*, is that in that case the contracts were made at different times. This distinction is immaterial, and was disregarded by this court in *Bank of Charleston* v. *Curtiss*, 18 Conn., 349.

2. The certificate filed by Mandeville is void as not properly stating the amount due him at the time of filing the certificate. The object of the certificate is to give notice of the

amount of the claim as well as the description of the property. The statute requires that the amount be stated "as nearly as the same can be ascertained." Gen. Statutes, p. 359, sec. 9. Due care must be exercised in ascertaining what it is. The amount due Mandeville was $1,544.56; the amount claimed in the certificate is $4,270.06; and the error is $2,725.50. A small error will be overlooked or excused, if made without fraud; but such gross inaccuracy must vitiate the certificate if any error will.

PARDEE, J. E. L. Kenyon desired to establish a coal-yard into which he could receive coal from vessels and from which he could deliver it to purchasers. In furtherance of this plan he bought one of two adjoining pieces of land and took a lease for fifty years of the other; from the time of the purchase and lease he subjected both to one use; he built a continuous dock for the reception of coal along the entire river front of both; he erected an exterior fence enclosing both; no interior fence remained to indicate the line which had formerly separated them; and the platform scales were so located as to be partly in each purchase. Here was unity of title, of plan, and of use. The ancient divisional line ceased to perform any office or to have any place after the union of title in Kenyon; he acquired entire control over it, and, as he might do, obliterated it in law and in fact, for the purposes of this case, by placing a structure over it on both pieces, all of which structure contributed to one end, namely, the convenient receipt and sale of coal. Nothing remained to suggest to the material-man or to the mechanic any separation in fact or intent. The lumber and the labor furnished by them respectively might well seem to contribute to the furtherance of the plan to complete convenient structures for the storage and sale of coal. After the owner has thus destroyed the former line of separation we find neither warrant nor occasion for re-establishing it.

A store stood upon one of the pieces of property when Kenyon purchased it. A part of this he used as an office for the transaction of his coal business; a part of it, upon which he had made some slight repairs, he leased to others; but we

do not think that this circumstance should affect the result; it is but an incident, and quite aside from the main design; in the eye of the law the whole property was still substantially devoted to one use.

The petitioner Mandeville filed his certificate of lien for the sum of $4,270.06; the sum really due to him was $1,544.56, and the difference was caused by erroneously including the amount of certain notes given by Kenyon and omitting credits to which he was entitled. The court finds that there was neither fraud nor intent to deceive. He continued to perform labor upon, and furnish materials for the structures upon the property from May to December, 1875, not under any special contract, but to receive a reasonable compensation therefor. Three months before he ceased to labor and furnish materials the respondents Linderman & Co. took their mortgage upon the property. Of course they could then have had no very accurate knowledge as to the amount to be included in his future certificate of lien. It is not found, nor is there any reason for believing, that they have been misled or have been induced to change their position to their injury by this subsequent mistake on the part of Mandeville. The point of their complaint is that they have now discovered that a lien, the amount of which was necessarily determined after their mortgage, but which reaches back and takes precedence of that, is about $2,700 less than the sum named in the certificate, and that their security is improved to that extent. While we do not intend to weaken the general rule that certificates of lien must speak the truth with reasonable accuracy, a rule in the interest of all persons giving subsequent credit upon the property, we do not think that a court of equity can be called upon to declare Mandeville's lien utterly void upon the motion of persons who have lost nothing by his mistake.

We advise the City Court of Hartford that the lien of Marston & Co. is valid for the sum of $1,270.43; and that of Mandeville for the sum of $1,544.56; each with interest from December 1st, 1875; and that decrees of foreclosure should be passed in favor of the petitioners respectively.

In this opinion the other judges concurred.