## THE CONNECTICUT NATIONAL BANK *v.*
## GINA LORENZATO ET AL.
## (14371)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued December 11, 1991—decision released February 4, 1992

*Thomas P. Parrino,* with whom was *James F. Sullivan,* for the appellant (defendant New Canaan Bank and Trust Company).

*Peter M. Nolin,* with whom was *Scott G. Grubin,* for the appellee (plaintiff).

PETERS, C. J. This appeal concerns the circumstances under which a properly executed mortgage takes priority over a subsequent judicial lien when the mortgage, as recorded, inadvertently contains an unsigned signature page. The plaintiff, Connecticut National Bank (mortgagee), brought an action to foreclose a mortgage against the defendants Gina and Mario Lorenzato because of their default on the underlying promissory note secured by the mortgage. The mortgagee's action also cited as defendants other allegedly subsequent lienholders, including the defendant New Canaan Bank and Trust Company (lien creditor). All of the defendants were defaulted, except for the lien creditor, which filed a motion for summary judgment maintaining that its lien took precedence over that of the mortgage. The mortgagee responded by filing a cross motion for summary judgment. The trial court, *Cioffi, J.,* granted the motion filed by the mortgagee, and the court, *Nigro, J.,* subsequently rendered a judgment of strict foreclosure on its behalf. The lien creditor appealed to the Appellate Court[1] and we transferred the appeal to this court pursuant to Practice Book § 4023. We affirm.

The trial court's memorandum of decision contains the following relevant facts, which are undisputed. Gina Lorenzato owned property in New Canaan. On February 10, 1989, Gina Lorenzato executed an open-end construction mortgage on this property to secure the contemporaneous promissory note of Gina and Mario Lorenzato in the amount of $1.7 million in favor of the mortgagee. The mortgage, and a rider attached to it, were properly signed, witnessed and acknowledged on that date in accordance with the requirements of Gen-

---

[1] The lien creditor earlier had tried to appeal to the Appellate Court from the trial court's decision on the motions for summary judgment. The Appellate Court dismissed that appeal, on March 6, 1991, for lack of a final judgment.

eral Statutes § 47-5 (a).[2] That same day, the mortgage was recorded in the town land records. Through the inadvertence of the mortgagee, the copy of the mortgage that was recorded contained a signature page lacking the required signatures and acknowledgment. The rider, attached to and referencing the mortgage, contained the required signatures and was properly witnessed, executed and acknowledged.

On March 3, 1989, the lien creditor recorded a writ of attachment in the amount of $55,000 against the same property on the town land records. The mortgagee has challenged the priority status, but not the validity, of that lien.

On March 27, 1989, the mortgagee again recorded its mortgage on the town land records. The newly recorded mortgage differed from the one earlier recorded in only one respect: it contained a fully executed signature page.

The trial court, *Cioffi, J.,* ruled that the mortgage and rider, as recorded, gave sufficient notice to the lien creditor of the Lorenzatos' obligation to the mortgagee. The court noted that the lien creditor had not alleged either that it had been misled by the omission of the signature page, or that it could not have determined the validity of the mortgage by common prudence and by the exercise of ordinary diligence. *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 580, 522 A.2d

---

[2] "[General Statutes] Sec. 47-5. CONVEYANCES TO BE IN WRITING AND ACKNOWLEDGED. CONVEYANCES PURSUANT TO POWER OF ATTORNEY. (a) All conveyances of land shall be: (1) In writing; (2) if the grantor is a natural person, subscribed, with or without a seal, by the grantor with his own hand or with his mark with his name annexed to it or by his attorney authorized for that purpose by a power executed, acknowledged and witnessed in the manner provided for conveyances or, if the grantor is a corporation or partnership, subscribed by a duly authorized person; (3) acknowledged by the grantor, his attorney or such duly authorized person to be his free act and deed; and (4) attested to by two witnesses with their own hands."

763 (1987). For these reasons, the court denied the lien creditor's motion for summary judgment and granted the cross motion filed by the mortgagee.

In subsequent proceedings, the trial court, *Nigro, J.,* rendered a judgment of strict foreclosure, finding the debt owed to the mortgagee to be $1,734,204.70 plus fees, and the appraised value of the mortgaged property to be $845,000. Because of the trial court's refusal to terminate the stay of execution attendant to the filing of the lien creditor's appeal, law days that were set in conjunction with the judgment of foreclosure have not been implemented.

In its appeal, the lien creditor maintains that the trial court improperly granted the mortgagee's cross motion for summary judgment for two reasons. Its principal contention is that our recording statute makes the defective recordation of a deed a nullity. From that premise, it argues that a defectively recorded deed cannot give constructive notice to third persons. It buttresses this contention with an interpretation of a recent validating act, which provides no relief for the mortgagee in the circumstances of this case.[3] Nevertheless, we are unpersuaded that the lien creditor should prevail in the present factual situation.

The rights of the parties depend upon the terms of our recording statute. General Statutes § 47-10 provides, in relevant part: "No conveyance shall be effec-

[3] This case is governed by the recording statute, General Statutes § 47-10, rather than by one of the recently enacted "validating acts." The fact that the legislature has periodically enacted legislation to validate defective instruments of conveyance, in the absence of pending litigation, does not predetermine the priority issues presented by this case. The mortgagee has never asserted any claim under any of the recently enacted validating acts; Spec. Acts January Sess. 1991, No. 91-1, §§ 3, 9 and 10; Spec. Acts 1989, No. 89-6, §§ 3, 9 and 10. We are unpersuaded by the lien creditor's contention that the legislature's enactment of these and earlier validating acts informs the priorities of the parties under § 47-10.

tual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies." We must determine under what circumstances a recorded deed containing an unsigned signature page can qualify as a "conveyance" that has been sufficiently "recorded" to afford constructive notice to a third party lien creditor.

The effectiveness of a recorded conveyance lacking a requisite signature page, when the underlying mortgage deed was validly executed, is a question of first impression in this state. Resolution of this question must take into account three overlapping lines of authority in our existing caselaw.

The lien creditor emphasizes that, in cases dating back to the early part of the nineteenth century, this court has considered the effectiveness of a mortgage that was defectively executed because of the absence of a necessary signature or acknowledgement. We have consistently held that the recordation of such a defectively executed mortgage does not give constructive notice to third persons. See, e.g., *Goodman* v. *Randall,* 44 Conn. 321, 325–26 (1877); *Winsted Savings Bank & Building Assn.* v. *Spencer,* 26 Conn. 195, 198 (1857); *Sumner* v. *Rhodes,* 14 Conn. 135, 139 (1840); *Carter* v. *Champion,* 8 Conn. 549, 558–59 (1831); *Watson* v. *Wells,* 5 Conn. 468, 473 (1825); *Merwin* v. *Camp,* 3 Conn. 35, 41–42 (1819).

The mortgagee reminds us that, during the same period, this court has also determined the criteria for the effective recordation of a properly executed mortgage. We have consistently held that the recordation of a valid mortgage gives constructive notice to third persons if the record sufficiently discloses the real nature of the transaction so that the third party claimant, exercising common prudence and ordinary diligence, can ascertain the extent of the encumbrance.

*Peoples Savings Bank* v. *Corrado,* 151 Conn. 388, 391, 198 A.2d 209 (1964); *Sadd* v. *Heim,* 143 Conn. 582, 585, 124 A.2d 522 (1956); *Swaye* v. *Murphy,* 126 Conn. 497, 500, 12 A.2d 547 (1940); *Bridgeport Land & Title Co.* v. *George Orlove Co.,* 91 Conn. 496, 497–98, 100 A. 30 (1917); *Beach* v. *Osborne,* 74 Conn. 405, 408, 50 A. 1019 (1902); *Merrills* v. *Swift,* 18 Conn. 257, 264 (1847); *Pettibone* v. *Griswold,* 4 Conn. 158, 162 (1822). We have most recently reaffirmed the notice-giving function of our mortgage recordation law in *Dart & Bogue Co.* v. *Slosberg,* supra, 578–79.

Finally, this court has adjudicated the effect to be given to a properly executed mortgage, duly tendered for recordation, that is imperfectly recorded due to no fault of the mortgagee. We have held that the imperfect recordation of a valid mortgage gives constructive notice to third persons, despite a clerk's mistake in its actual recordation, at least if the mistake is so obvious as to have put a third party claimant "upon inquiry" to ascertain what the mortgage contains. *Lewis* v. *Hinman,* 56 Conn. 55, 67–68, 13 A. 143 (1887); see also *Butchers' Ice & Supply Co.* v. *Bascom,* 109 Conn. 433, 440, 146 A. 843 (1929).[4]

There is a principled distinction between a mortgage deed that is imperfectly executed and one that is imperfectly recorded. The former is a nullity and is, therefore, incapable of giving constructive notice; the latter affords constructive notice to subsequent third party

---

[4] With regard to chattel security, the legislature has expressly provided that a secured party has effectively perfected an otherwise valid security interest against third parties once the secured party has taken all the steps for perfection that are required by article 9 of the Uniform Commercial Code. See General Statutes § 42a-9-303 (1) and Uniform Commercial Code comment 1 to that section. Under that section, any ministerial mistake in the filing of a security interest would not defeat the priority of the secured creditor. Third parties can require their debtors to comply with a statutory right of inquiry provided by General Statutes § 42a-9-208.

creditors to the extent that the mortgage, as recorded, contains sufficient information to put a title searcher on inquiry. From the point of view of the third party who relies on that which the recorded conveyance purports to encumber, it is immaterial whether an imperfect recordation is attributable to the inadvertence of the recording clerk or to the inadvertence of the mortgagee. We have, in effect, so held in *Connecticut National Bank* v. *Esposito,* 210 Conn. 221, 230–31, 554 A.2d 735 (1989), in which the issue was whether a recorded mortgage deed gave constructive notice to third party creditors, even though the mortgagee in recording its deed had inadvertently omitted documentation containing important information about the amount of the mortgage obligation. We concluded that the recordation was effective because an express reference to the omitted documentation in the recorded mortgage deed would have enabled a title searcher to make the requisite inquiry to discover the terms of the mortgage. Id., 230. Applying these principles to the circumstances of this case, we are persuaded that the mortgagee's inadvertent mistake in recordation gave constructive notice to the lien creditor because the properly executed rider was sufficient to put a title searcher on inquiry about the status of the mortgage.

The distinction we have drawn between the defective execution and the defective recordation of a mortgage deed finds support in the law elsewhere. "Many errors in recording . . . are so neutralized by other matters which do appear in the record, that no searcher after the title possibly could be misled. Obviously, such shortcomings should not affect the validity of the record as notification. Among them are . . . an error or omission cured by the appearance of the information at some other point in the record." 2 M. Merrill, Notice (1952) § 1067, pp. 693–94; 1 L. Jones, A Treatise on the Law of Mortgages of Real Property (8th Ed. 1928)

§ 634, pp. 899–900; see, e.g., *Watson Construction Co.* v. *Amfac Mortgage Corporation,* 124 Ariz. 570, 575–76, 606 P.2d 421 (1979); *Huston* v. *Seeley,* 27 Iowa 183, 191 (1869); *Sinclair* v. *Slawson,* 44 Mich. 123, 126–29, 6 N.W. 207 (1880); *Beardsley* v. *Day,* 52 Minn. 451, 452–53, 55 N.W. 46 (1893); *Smith* v. *Ayden Lumber Co.,* 144 N.C. 47, 48–49, 56 S.E. 555 (1907); *Wilkins* v. *Reed,* 156 Tenn. 321, 324, 300 S.W. 588 (1927). In the cases in which the defective recordation of a valid deed was held not to give constructive notice, in contradistinction to the circumstances here, there appears to have been nothing on the face of the recorded deed to put a title searcher on inquiry about the error or omission. See, e.g., *Shepherd* v. *Burkhalter,* 13 Ga. 443, 448 (1853); *Todd* v. *Union Dime Savings Institution of New York,* 118 N.Y. 337, 23 N.E. 299 (1890); *Sawyer* v. *Adams,* 8 Vt. 172, 175 (1836); *Pringle* v. *Dunn,* 37 Wis. 449, 460–65 (1875).

The judgment is affirmed.

In this opinion the other justices concurred.