## First Constitution Bank *v.* Harbor Village Limited Partnership et al.
## (14782)

Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued January 7—decision released August 16, 1994

*Jonathan S. Bowman,* with whom was *Paul H. Begemann,* for the appellant (defendant Fairfield Dock Company, Inc.).

*Jonathan D. Elliot,* with whom was *Monica M. Copertino,* for the appellee (plaintiff).

KATZ, J. The dispositive issue in this certified appeal is whether a mechanic's lien filed by the defendant, Fairfield Dock Company, Inc.,[1] properly executed and indexed in a town's land records, is valid as against a subsequent encumbrance under the facts of this case if the description of property attached to the certificate of mechanic's lien became detached prior to the recording of the lien certificate. The plaintiff, First Marine Corporation,[2] appealed from the judgment of strict foreclosure rendered by the trial court following a determination of priority in which the trial court upheld the validity of the mechanic's lien. The Appellate Court reversed the judgment of the trial court and concluded that the mechanic's lien was invalid without the attachment containing the complete description of the property. *First Constitution Bank* v. *Harbor Village Ltd. Partnership,* 31 Conn. App. 15, 622 A.2d 1063 (1993). We granted the defendant's petition for certification[3] and now reverse the judgment of the Appellate Court.

---

[1] Although several defendants have been named in this foreclosure action, Fairfield Dock Company, Inc., is the sole defendant to appeal. Accordingly, for purposes of this appeal, the term defendant refers only to Fairfield Dock Company, Inc.

[2] The substitute plaintiff, First Marine Corporation, appealed as successor in interest to First Constitution Bank. In this opinion we will refer to First Marine Corporation as the plaintiff.

[3] We granted certification limited to the following issues: (1) "Does a different standard apply in determining whether or not defectively recorded mortgages, as opposed to defectively recorded mechanic's liens, are valid, if both are properly executed?" and (2) "Was the Appellate Court correct in holding that a certificate of mechanic's lien, properly executed, and prop-

The parties' stipulations and the evidence in the record reveal the following facts. First Constitution Bank (First Constitution), the predecessor in interest to the plaintiff, instituted the present action to recover sums due under a commercial revolving loan note. The note was secured by a mortgage on six contiguous parcels of land (parcels) that are located along the Mianus River on River Road in Greenwich and are owned by Harbor Village Limited Partnership (Harbor Village) and William O. Rockwood, Jr., trustee.[4] The loan proceeds, in the amount of $21,500,000, were used to finance the construction of a marina facility and a dockominium at the site of the parcels.

On March 3, 1989, before the recording of the mortgage,[5] the defendant began to render services and furnish materials in the construction and improvement of the parcels in connection with the marina and dockominium project. On April 16, 1990, the defendant timely filed a certificate of mechanic's lien on the parcels with the Greenwich town clerk. The certificate of mechanic's lien described the property to which the lien attached as being "situated in the Town of Greenwich, County of Fairfield and State of Connecticut, on a lot of land belonging to said Harbor Village Limited Partnership and William Rockwood, Jr., Trustee, and bounded as follows: *See Exhibit 'A' attached.*" (Emphasis added.) The trial court found that the defendant's

---

erly indexed in the Greenwich Land Records, but whose property description became detached prior to recording, is invalid?" *First Constitution Bank* v. *Harbor Village Ltd. Partnership*, 226 Conn. 906, 625 A.2d 1377 (1993). Because the second certified issue is dispositive of the appeal, we need not reach the first certified issue.

[4] Three of the parcels are owned by Harbor Village and three are owned by Rockwood. Each parcel bears its own street address.

[5] The mortgage securing the loan from First Constitution was duly recorded on May 8, 1989.

attorney, who had prepared the certificate of mechanic's lien, had also prepared Exhibit A[6] to be attached

---

[6] Exhibit A provides:

"SCHEDULE A
(PROPERTY DESCRIPTION)
FIRST TRACT (COMMONLY KNOWN AS 77-79 RIVER ROAD):

All that certain piece or parcel of land with all the buildings and improvements thereon, situated in the Town of Greenwich, County of Fairfield and State of Connecticut, shown and described as Parcel D on the certain map entitled, 'Map Showing Properties Surveyed for Harbor Village Limited Partnership and William O. Rockwood, Jr., Trustee, Greenwich, CT,' certified substantially correct on 5 December '86 by Raymond Redniss #10046, revised 12/18/86, 2/9/87 and 3/23/87, which map is on file in the office of the Greenwich Town Clerk as Map No. 6355.

Together with riparian and littoral rights extending from said Mean High Water Line at the westerly side of the tidal waters of the Mianus River as established in August, 1985 to the northerly side of the Connecticut Turnpike right of way (a non-access highway line) and the westerly side of the Federal Channel of the Mianus River as established by the United States Army Corps of Engineers.

Together with all rights of access to and from the channel of the Mianus River, of wharfing and docking out, of piaraga and .bulkheading, and all other franchises and riparian rights appurtenant and incidental to the ownership of the upland property, and all right, title and interest of Grantor in and to the land under the Mianus River insofar as the same are appurtenant to the upland property.

SECOND TRACT (COMMONLY KNOWN AS 35 AND 41 RIVER ROAD):

All that certain piece or parcel of land with all the buildings and improvements thereon, situated in the Town of Greenwich, County of Fairfield and State of Connecticut, as shown and described as Parcels 1 and A on the certain map entitled 'Map Showing Property of William O. Rockwood, Jr., Trustee, Greenwich, CT,' certified substantially correct on 5 December '86 by Raymond Redniss #10046, revised 12/18/86, 2/9/87 and 3/23/87, which map is on file in the office of the Greenwich Town Clerk as Map No. 6355.

Together with rights contained in a certain Deed from John Barney to The Gustav H. Johanson Corp., dated April 4, 1955 and recorded in Volume 532 at Page 392 of the Greenwich Land Records.

Together with riparian and littoral rights extending from said Mean High Water Line at the westerly side of the tidal waters of the Mianus River as established in August, 1985 to the northerly side of the Connecticut Turnpike right of way (a non-access highway line) and the westerly side of the Federal Channel of the Mianus River as established by the United States Army Corps of Engineers.

Together with all rights of access to and from the channel of the Mianus River, of wharfing and docking out, of piaraga and bulkheading, and all

to that certificate for filing in the town clerk's office and had personally delivered the certificate, with

other franchises and riparian rights appurtenant and incidental to the ownership of the upland property, and all right, title and interest of Grantor in and to the land under the Mianus River insofar as the same are appurtenant to the upland property.

### THIRD TRACT (COMMONLY KNOWN AS 51 RIVER ROAD):

All that certain piece or parcel of land with all the buildings and improvements thereon, situated in the Town of Greenwich, County of Fairfield and State of Connecticut, shown and described as Parcel B on the certain map entitled 'Map Showing Properties Surveyed for Harbor Village Limited Partnership and William O. Rockwood, Jr., Trustee, Greenwich, CT,' certified substantially correct on 5 December '86 by Raymond Redniss #10046, revised 12/18/86, 2/9/87 and 3/23/87, which map is on file in the office of the Greenwich Town Clerk as Map No. 6355.

Together with riparian and littoral rights extending from said Mean High Water Line at the westerly side of the tidal waters of the Mianus River as established in August, 1985 to the northerly side of the Connecticut Turnpike right of way (a non-access highway line) and the westerly side of the Federal Channel of the Mianus River as established by the United States Army Corps of Engineers.

Together with all rights of access to and from the channel of the Mianus River, of wharfing and docking out, of piaraga and bulkheading, and all other franchises and riparian rights appurtenant and incidental to the ownership of the upland property, and all right, title and interest of Grantor in and to the land under the Mianus River insofar as the same are appurtenant to the upland property.

### FOURTH TRACT (COMMONLY KNOWN AS 81 RIVER ROAD):

All that certain piece or parcel of land with all the buildings and improvements thereon, situated in the Town of Greenwich, County of Fairfield and State of Connecticut, shown and described as Parcel E on the certain map entitled, 'Map Showing Properties Surveyed for Harbor Village Limited Partnership and William O. Rockwood, Jr., Trustee, Greenwich, CT,' certified substantially correct on 5 December '86 by Raymond Redniss #10046, revised 12/18/86, 2/9/87 and 3/23/87, which map is on file in the office of the Greenwich Town Clerk as Map No. 6355.

Together with riparian and littoral rights extending from said Mean High Water Line at the westerly side of the tidal waters of the Mianus River as established in August, 1985 to the northerly side of the Connecticut Turnpike right of way (a non-access highway line) and the westerly side of the Federal Channel of the Mianus River as established by the United States Army Corps of Engineers.

Together with all rights of access to and from the channel of the Mianus River, of wharfing and docking out, of piaraga and bulkheading, and all other franchises and riparian rights appurtenant and incidental to the owner-

Exhibit A attached, to the sheriff, now deceased. The lien certificate that ultimately was recorded on the land

ship of the upland property, and all right, title and interest of Grantor in and to the land under the Mianus River insofar as the same are appurtenant to the upland property.

FIFTH TRACT (COMMONLY KNOWN AS 67 RIVER ROAD):

All that certain piece or parcel of land with all the buildings and improvements thereon, situated in the Town of Greenwich, County of Fairfield and State of Connecticut, shown and described as Parcel 3 on the certain map entitled, 'Map Showing Properties Surveyed for Harbor Village Limited Partnership and William O. Rockwood, Jr., Trustee, Greenwich, CT,' certified substantially correct on 5 December '86 by Raymond Redniss #10046, revised 12/18/86, 2/9/87 and 3/23/87, which map is on file in the office of the Greenwich Town Clerk as Map No. 6355.

Together with riparian and littoral rights extending from said Mean High Water Line at the westerly side of the tidal waters of the Mianus River as established in August, 1985 to the northerly side of the Connecticut Turnpike right of way (a non-access highway line) and the westerly side of the Federal Channel of the Mianus River as established by the United States Army Corps of Engineers.

Together with all rights of access to and from the channel of the Mianus River, of wharfing and docking out, of piaraga and bulkheading, and all other franchises and riparian rights appurtenant and incidental to the ownership of the upland property, and all right, title and interest of Grantor in and to the land under the Mianus River insofar as the same are appurtenant to the upland property.

SIXTH TRACT (COMMONLY KNOWN AS 59 RIVER ROAD):

All that certain piece or parcel of land with all the buildings and improvements thereon, situated in the Town of Greenwich, County of Fairfield and State of Connecticut, shown and described as Parcels 2 and C on the certain map entitled, 'Map Showing Properties Surveyed for Harbor Village Limited Partnership and William O. Rockwood, Jr., Trustee, Greenwich, CT,' certified substantially correct on 5 December '86 by Raymond Redniss #10046, revised 12/18/86, 2/9/87 and 3/23/87, which map is on file in the office of the Greenwich Town Clerk as Map No. 6355.

Together with riparian and littoral rights extending from said Mean High Water Line at the westerly side of the tidal waters of the Mianus River as established in August, 1985 to the northerly side of the Connecticut Turnpike right of way (a non-access highway line) and the westerly side of the Federal Channel of the Mianus River as established by the United States Army Corps of Engineers.

Together with all rights of access to and from the channel of the Mianus River, of wharfing and docking out, of piaraga and bulkheading, and all other franchises and riparian rights appurtenant and incidental to the owner-

records, however, did not include Exhibit A,[7] and, consequently, did not contain references to the boundaries and street addresses of the parcels.

Notwithstanding this omission, the Greenwich town clerk correctly noted the street location of the property in the grantor/grantee indices and indexed the lien under the appropriate headings for the defendant, Harbor Village and Rockwood. Additionally, Exhibit A was attached to the copies of the mechanic's lien certificate that were served on Harbor Village and Rockwood as owners of the parcels, in connection with the recording of the lien. Moreover, Exhibit A was attached to the lis pendens filed on the land records by the defendant in connection with an independent action to foreclose its mechanic's lien.[8] Finally, at all material times, neither Harbor Village nor Rockwood owned any other property in Greenwich other than the parcels.

By an amended complaint dated December 18, 1991, following a default on the loan by Harbor Village, First Constitution instituted a foreclosure action to recover sums due under the loan. In response to First Constitution's complaint, the defendant claimed that its mechanic's lien took priority over the mortgage duly recorded by First Constitution.[9] Thereafter, the plain-

ship of the upland property, and all right, title and interest of Grantor in and to the land under the Mianus River insofar as the same are appurtenant to the upland property."

[7] The recording fees paid by the defendant reflect that only two pages of the intended five page document were recorded. The original two page certificate that was actually recorded, without Exhibit A, was returned to the defendant's attorney.

[8] On March 27, 1991, the defendant brought its own action to foreclose on its mechanic's lien, filing a notice of lis pendens, with Exhibit A attached, on the land records and serving the same on Harbor Village and Rockwood.

[9] General Statutes § 49-33 (d) provides: "If any instrument constituting a valid encumbrance upon such land other than a mechanic's lien is filed for record while the building is being constructed, raised, removed or repaired, or the lot is being improved, or the plot of land is being improved or subdivided, all such mechanic's liens originating prior to the filing of

tiff, as successor in interest to First Constitution, filed a motion for determination of priority and for judgment of strict foreclosure, asserting that the defendant's mechanic's lien was defective and, therefore, that the defendant's interest in the parcels, if any, was subsequent to that of First Constitution. Following a hearing on the motion, the trial court concluded that the defendant's mechanic's lien was valid and, consequently, was prior in right to the mortgage recorded by First Constitution. Accordingly, the trial court found in favor of the defendant, rendered a judgment of strict foreclosure, and set law days in inverse order of priorities. The plaintiff appealed from the judgment of the trial court to the Appellate Court, which reversed the judgment of the trial court. This appeal by the defendant followed.

The defendant claims that the Appellate Court incorrectly determined that its certificate of mechanic's lien is invalid. It argues that the mechanic's lien is valid under General Statutes § 49-34[10] because the certifi-

---

that instrument for record take precedence over that encumbrance and no such mechanic's lien shall have priority over any other such mechanic's lien. That encumbrance and all such mechanic's liens shall take precedence over any mechanic's lien which originates for materials furnished or services rendered after the filing of that instrument for record, but no one of the mechanic's liens originating after the filing of that instrument for record has precedence over another. If any lienor waives or releases his lien or claim of precedence to any such encumbrance, that lien shall be classed with and have no priority over liens originating subsequent to that encumbrance."

Because the defendant's date of commencement of the work was prior in time to the recording of the mortgage securing the loan from First Constitution, it is undisputed that the defendant's mechanic's lien, if valid, took precedence over the mortgage.

[10] General Statutes § 49-34 provides: "CERTIFICATE OF LIEN TO BE RECORDED AND NOTICE GIVEN TO OWNER. A mechanic's lien is not valid, unless the person performing the services or furnishing the materials, (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds

cate of mechanic's lien was indexed correctly in the land records and was within the chain of title, and because the certificate, as recorded, referred to the omitted Exhibit A. We agree.

It is well established that a mechanic's lien "will not be valid unless the person having such claim shall, within a stated time, lodge with the town clerk of the town in which said building is situated a certificate in writing, describing the premises, the amount claimed as a lien thereon, and the date of the commencement of the services or the furnishing of materials. General Statutes §§ 4135, 4136." *Tramonte* v. *Wilens,* 89 Conn. 520, 523, 94 A. 978 (1915). We also have repeatedly stated, however, that, although a mechanic's lien is in derogation of the common law, we do not compel a strict construction of its requirements. *Wilcox* v. *Woodruff,* 61 Conn. 578, 585, 24 A. 1056 (1891). "We have long endorsed a policy favoring liberal construction of claimed inadequacies in certificates of mechanic's liens in order to achieve the remedial purposes of the mechanic's lien statutes." *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* 210 Conn. 511, 514, 555 A.2d 990 (1989). We recognize that the remedial purpose of mechanic's lien law is "to furnish security for a contractor's labor and materials" and that this beneficent purpose requires "a generous construction." *Seaman* v. *Climate Control Corp.,* 181 Conn. 592, 597, 436 A.2d 271 (1980); see *J. C. Penney Properties, Inc.*

of land, (A) describing the premises, the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and the date of the commencement of the performance of services or furnishing of materials, (B) stating that the amount claimed is justly due, as nearly as the same can be ascertained, and (C) subscribed and sworn to by the claimant, and (2) within the same time, or prior to the lodging of the certificate but not later than thirty days after lodging the certificate, serves a true and attested copy of the certificate upon the owner of the building, lot or plot of land in the same manner as is provided for the service of the notice in section 49-35."

v. *Peter M. Santella Co.,* supra, 514 (generous construction requires only reasonable compliance with statutory provisions).

"In accordance with this policy, our courts have been liberal in validating liens despite claimed errors on the face of the lien certificate where the mistake was made in good faith and no resulting prejudice was claimed. See, e.g., *H & S Torrington Associates* v. *Lutz Engineering Co.,* [185 Conn. 549, 555–56, 441 A.2d 171 (1981)] (copy of certificate served on owner by a subcontractor failed to state its intent to file a lien); *Morici* v. *Jarvie,* 137 Conn. 97, 102, 75 A.2d 47 (1950) (misstatement of amount due); *Pierce, Butler & Pierce Mfg. Corporation* v. *Enders,* 118 Conn. 610, 615, 174 A. 169 (1934) (subcontractor mislabeled as contractor and agent); *Burque* v. *Naugatuck Lumber Co.,* 113 Conn. 350, 353, 155 A. 414 (1931) (defect in description); *Peck* v. *Brush,* 89 Conn. 554, 556–57, 94 A. 981 (1915) (inclusion of extra land in certificate); *Westland* v. *Goodman,* 47 Conn. 83, 86 (1879) (erroneous date of completion of work)." *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 210 Conn. 515; see also *Halsted & Harmount Co.* v. *Arick,* 76 Conn. 382, 387, 56 A. 628 (1904); *Nichols* v. *Culver,* 51 Conn. 177, 180 (1883); *Marston* v. *Kenyon,* 44 Conn. 349, 356 (1877). As we have reasoned many times, "we do not think a court of equity can be called upon to declare [a] lien utterly void upon the motion of persons who have lost nothing by [the] mistake." *Marston* v. *Kenyon,* supra, 356.

Therefore, "[w]here the misstatement of the claim is intentional, that is, where the statement of the claim is intentionally false, or where it is fraudulent, the lien will be void; but where it is the result of a mistake, the misstatement of the claim will not invalidate the lien. We apprehend that it would be impossible to differentiate between the mistake in the statement of the claim and the mistake in the description of the property

claimed to be covered by the lien." *Tramonte* v. *Wilens,* supra, 89 Conn. 524; see also *Rose* v. *Persse & Brooks Paper Works,* 29 Conn. 256, 266 (1860) (mistake as to claim will be treated like mistake as to description of property). Where, however, there has been *"no attempt to give* an accurate and true description, then . . . the certificate ought to be held void, as no better than a total omission *to attempt to comply* with its provisions." (Emphasis added; internal quotation marks omitted.) *Tramonte* v. *Wilens,* supra, 525.

Applying these principles to the facts of this case, we conclude that the defendant's inadvertent failure to include Exhibit A in the recordation does not indicate a failure to attempt to comply with the provisions of § 49-34. The defendant properly executed the lien certificate and served it, along with Exhibit A, on Harbor Village and Rockwood in connection with the recording of the lien. The trial court found that the defendant's attorney, who had prepared the certificate of mechanic's lien and Exhibit A to be attached to the certificate for filing in the town clerk's office, had personally delivered the certificate, with Exhibit A attached, to the sheriff. Exhibit A, the property description in question, sets forth a separate description for each of the six parcels, referring to them as first tract (77-79 River Road), second tract (35 and 41 River Road), third tract (51 River Road), fourth tract (81 River Road), fifth tract (67 River Road) and sixth tract (59 River Road). Somehow Exhibit A became detached from its certificate of lien when it was recorded. In light of the defendant's demonstrated good faith attempt to comply with the statute, however, it was reasonable for the trial court to have concluded that the defendant's conduct did not reflect the type of intentional or fraudulent conduct that would be fatal to the lien.[11]

[11] It is telling that the owners of the property brought a separate application to discharge the defendant's mechanic's lien on grounds unrelated to those at issue in the case before us.

It was also reasonable for the trial court to have concluded that the mistake by someone other than the defendant would not undermine a finding of reasonable compliance with § 49-34. Reasonable compliance with statutory requirements has been routinely measured by whether the lienor's mistake was made in good faith and by whether prejudice resulted from the mistake. See *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 210 Conn. 515. The certificate of mechanic's lien will be held invalid "where the certificate is either intentionally false, or so grossly inaccurate as to show that there was no attempt to give an accurate and true description . . . ." *Rose* v. *Persse & Brooks Paper Works,* supra, 29 Conn. 266. If neither deficiency exists, we express satisfaction that the statute has been substantially complied with and reject the argument that the lien should be invalidated. See *Tramonte* v. *Wilens,* supra, 89 Conn. 526; *Shattuck* v. *Beardsley,* 46 Conn. 386, 387–88 (1878).

Once the trial court has assessed the question of good faith, as it relates to the issue of reasonable compliance, it must then determine whether there was prejudice as a result of the claimed mistake. *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 210 Conn. 515. The plaintiff concedes that there was no prejudice whatsoever to First Constitution as a result of Exhibit A having become detached. The mistake did not impact the plaintiff's conduct in any way. Work on the property by the defendant had begun prior to and continued long after the recording of the mortgage securing the loan from First Constitution.

Generally, the most obvious way to gauge prejudice is to examine the notice to the landowner, other lien holders and prospective lien holders. In this case, because neither the plaintiff nor the landowners can claim a lack of notice or prejudice, the real issue as it relates to the question of prejudice is one of notice to

third parties. The claim before us, however, relates *solely* to whether the certificate of mechanic's lien, as recorded, reasonably satisfied that requirement.

In the context of mortgages, we have recognized that "[m]any errors in recording . . . are so neutralized by other matters which do appear in the record, that no searcher after the title possibly could be misled. Obviously, such shortcomings should not affect the validity of the record as notification." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Lorenzato,* 221 Conn. 77, 83, 602 A.2d 959 (1992). If we begin with the land records; *Connecticut National Bank* v. *Esposito,* 210 Conn. 221, 230, 554 A.2d 735 (1989) ("land records are the starting point for inquiry and not the ending point"); the uncontradicted testimony indicates that the existence of the lien was apparent from the title search of the Greenwich land records. The certificate of mechanic's lien filed by the defendant recites that the defendant furnished materials and rendered services on a lot of land "situated in the Town of Greenwich, County of Fairfield and State of Connecticut . . . belonging to said Harbor Village Limited Partnership and William O. Rockwood, Jr., Trustee, as bounded as follows: See Exhibit 'A' attached." Neither Harbor Village nor Rockwood owned any other property in Greenwich. As a result, the Greenwich town clerk correctly noted the property location in the grantor/grantee indices and indexed the lien under Fairfield Dock, under Harbor Village and under Rockwood. Moreover, the lis pendens filed on the land records by the defendant when it commenced the foreclosure of its mechanic's lien included Exhibit A and therefore contained the full legal description of the property. Finally, the plaintiff twice acknowledged in its own foreclosure complaint that the defendant claimed to have an interest in the premises by virtue of a mechanic's lien, setting forth in detail the pertinent

dates and volumes and pages of both the mechanic's lien and the lis pendens.

In *Connecticut National Bank* v. *Esposito,* supra, 210 Conn. 230, we concluded that, although "the mortgagee in recording its deed had inadvertently omitted documentation containing important information about the amount of the mortgage obligation," the recordation was nevertheless "effective because an express reference to the omitted documentation in the recorded mortgage deed would have enabled a title searcher to make the requisite inquiry to discover the terms of the mortgage." *Connecticut National Bank* v. *Lorenzato,* supra, 221 Conn. 83. Similarly, in *Lorenzato* we drew the distinction between the defective execution and the defective recording of a mortgage deed where the "inadvertent mistake in recordation gave constructive notice to the lien creditor because the properly executed rider was sufficient to put a title searcher on inquiry about the status of the mortgage." Id.

The issue before the court in *Lorenzato* was whether a properly executed, but defectively recorded, mortgage deed was valid. Although we do not decide today whether to apply the same standard in determining the validity of a defectively recorded mortgage and the validity of a defectively recorded mechanic's lien, we are free to consult other areas of the law for guidance, particularly when similar guiding policies are in play. In some instances, we have "reach[ed] back 169 years for the most cogent analogy." *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 210 Conn. 517. As an example, in discussing the mechanic's lien statute in *J. C. Penney Properties, Inc.,* this court analogized to law relating to the recording of a deed. Referring to *Pendleton* v. *Button,* 3 Conn. 406 (1820), a case in which the defendant had proposed to prove title to certain land with a deed that had never been acknowledged in writing, we remarked "that a certificate of mechan-

ic's lien under General Statutes § 49-34 is sufficiently like a deed of land to make *Pendleton* dispositive of this case." *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 517.

We recognize that there are clear differences between a mortgage and a mechanic's lien. A mechanic's lien, unlike a mortgage, is "not an agreement or contract between parties but rather a lien upon real estate which the plaintiff seeks to take by force of law and eventually to foreclose." *City Iron Works, Inc.* v. *Frank Badstuebner Post No. 2090,* 22 Conn. Sup. 230, 231, 167 A.2d 462 (1960). Unlike a mortgage deed, which may be reformed to reflect the contracting parties' mutual intent, the placement of a mechanic's lien is a unilateral act in which the lienor bears the burden of demonstrating statutory compliance. Nevertheless, reliance on mortgage law for the sole purpose of assessing whether notice was sufficient is appropriate. Although the differences in the origins of these two liens might affect a determination as to whether the execution was defective, such differences play no role in assessing whether there has been a defective recording. In both mortgage law and mechanic's lien law, the issue is whether the inadvertent mistake in recordation of a properly executed lien gave sufficient notice to put a title searcher on inquiry.

In this case, the Greenwich town clerk correctly noted the street location of the property in the grantor/grantee indices and indexed the lien under the appropriate headings for the defendant, Harbor Village and Rockwood. Accordingly, the trial court noted in its memorandum of decision that the land records themselves indicated that the defendant was claiming a mechanic's lien on property owned by Harbor Village and Rockwood and that a reasonable party searching the records would therefore conclude that a mechanic's lien could apply to all such properties. Additionally, the

trial court noted that because the recorded certificate of mechanic's lien explicitly referred to "Exhibit 'A' attached" for a description of the property, and because Exhibit A was not attached, "[t]he mistake [was] obvious." Thus, under the facts and circumstances of this case, the trial court properly concluded that a reasonable party searching the land records would not have been misled.

Finally, the plaintiff relies on this court's decision in *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 210 Conn. 511, in which we held that a mechanic's lien was invalid because the certificate of lien did not contain a written oath sworn to by the signer despite uncontradicted evidence that the oath had been administered orally. That decision is not, however, inconsistent with the decision we reach in this case. A certificate that does not contain a written oath does not demonstrate on its face that the facts contained in the document are true. *Red Rooster Construction Co.* v. *River Associates, Inc.,* 224 Conn. 563, 578, 620 A.2d 118 (1993). Both *J. C. Penney Properties, Inc.,* and *Red Rooster Construction Co.* deal with the necessity of an oath to establish the veracity of the document's contents, not whether the recording sufficiently placed a title searcher on notice that a mechanic had not been paid.[12]

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the plaintiff's remaining claims.

In this opinion BERDON and PALMER, Js., concurred.

***

[12] In support of its argument that the Appellate Court's decision was correct in concluding that the lien was invalid, the plaintiff also has pointed to other jurisdictions. As we noted in *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.,* 217 Conn. 361, 365, 585 A.2d 1210 (1991), the language

NORCOTT, J., with whom BORDEN, J., joins, dissenting. The majority disregards the plain language of General Statutes § 49-34[1] and the case law interpreting it. That statute requires a certificate of mechanic's lien, with a description of the property to be encumbered, to be lodged with the town clerk in order to create a valid mechanic's lien. The defendant Fairfield Dock Company, Inc., has conceded in all phases of this litigation that it failed to lodge such a certificate with the Greenwich town clerk. That omission is a failure to comply with a key statutory element required to create a valid mechanic's lien. Without such compliance, the defendant's actions result in a nullity. Because the concept of reasonable compliance with a statutory scheme should not be stretched to encompass a complete lack of compliance with the terms of a statute, I dissent from the majority opinion.

The plain language of § 49-34 provides in relevant part that "[a] mechanic's lien is not valid, *unless the person performing the services or furnishing the materials,* (1) within ninety days after he has ceased to do

of our mechanic's lien statutes differs from similar provisions in other states so that precedents from other states are of limited value in interpreting our statutes.

[1] General Statutes § 49-34 provides: "CERTIFICATE OF LIEN TO BE RECORDED AND NOTICE GIVEN TO OWNER. A mechanic's lien is not valid, unless the person performing the services or furnishing the materials, (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds of land, (A) describing the premises, the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and the date of the commencement of the performance of services or furnishing of materials, (B) stating that the amount claimed is justly due, as nearly as the same can be ascertained, and (C) subscribed and sworn to by the claimant, and (2) within the same time, or prior to the lodging of the certificate but not later than thirty days after lodging the certificate, serves a true and attested copy of the certificate upon the owner of the building, lot or plot of land in the same manner as is provided for the service of the notice in section 49-35."

so, *lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds of land, (A) describing the premises,* the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and the date of the commencement of the performance of services or furnishing of materials . . . ." (Emphasis added.)

It is clear that the term "describing the premises" requires a description of the property to be encumbered by the mechanic's lien. The defendant has conceded throughout this litigation that *no description* of the premises intended to be encumbered by its mechanic's lien *was lodged with the town clerk or recorded in the Greenwich land records.* By failing to identify the property encumbered by the lien, the defendant has failed to comply with a statutory element required to perfect a mechanic's lien. General Statutes § 49-34. Unlike the majority, I am unwilling to equate "reasonable compliance" with the specific statutory provisions with a complete lack of compliance with one of the enumerated statutory elements.

The majority does not apply our long-standing and recently reiterated standard for determining whether a mechanic's lien is valid under the statute: "In interpreting [the mechanic's lien statute] we are guided by well-settled principles of construction. . . . Even bearing in mind the statute's beneficent purpose, we are, however, constrained by the language of the statute as we find it, and cannot rewrite the statute or adopt the reasoning of precedents in other jurisdictions with different statutes. *Camputaro* v. *Stuart Hardwood Corporation,* [180 Conn. 545, 550, 429 A.2d 796 (1980)]; *New Haven Orphan Asylum* v. *Haggerty Co.,* 108 Conn. 232, 236, 142 A. 847 (1928); *Hartford Builders Finish Co.* v. *Anderson,* 99 Conn. 343, 345, 122 A. 76 (1923)." *Seaman* v. *Climate Control Corp.,* 181 Conn. 592, 597,

436 A.2d 271 (1980). "We have long endorsed a policy favoring liberal construction of claimed inadequacies in certificates of mechanic's liens in order to achieve the remedial purposes of the mechanic's lien statutes. Provisions of mechanic's lien law should be liberally construed so as to reasonably and fairly implement its remedial intent. *H & S Torrington Associates* v. *Lutz Engineering Co.,* 185 Conn. 549, 553, 441 A.2d 171 (1981). We have also recognized, however, that such a policy has limitations: [T]he principles that guide our interpretation of mechanic's lien legislation are well settled. Although this legislation creates a statutory lien in derogation of the common law . . . its remedial purpose to furnish security for a contractor's labor and materials requires a generous construction. . . . Generosity of spirit does not, however, permit departure from reasonable compliance with the specific provisions of the statute. *Stone* v. *Rosenfield,* [141 Conn. 188, 191, 104 A.2d 545 (1954)]; *City Lumber Co.* v. *Borsuk,* [131 Conn. 640, 645, 41 A.2d 775 (1945)]. (Citations omitted.) *Camputaro* v. *Stuart Hardwood Corporation,* [supra, 550–51]." (Internal quotation marks omitted.) *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* 210 Conn. 511, 514, 555 A.2d 990 (1989).

The majority has substituted for this standard, which measures the purported lienor's conduct against "reasonable compliance"; see id.; with the statute, a different standard: whether "the defendant's inadvertent failure to include Exhibit A in the recordation . . . indicate[s] a failure to attempt to comply with the provisions of § 49-34." I agree that the defendant attempted in good faith to comply with the statute. If all that were needed to comply with the terms of § 49-34 were an attempt to comply with the statute, however, it would be difficult to imagine a case in which a defective lien certificate would ever fail to render a purported lien valid.

Moreover, *Tramonte* v. *Wilens,* 89 Conn. 520, 94 A. 978 (1915), upon which the majority relies, is not to the contrary. In that case, as in all of the cases cited therein as well as all of the cases cited by the majority in which this court rejected claimed defects in the lien certificates,[2] there was a certificate lodged with the town clerk, as required by the statute, from which reasonable compliance with the statute could be measured. Thus, in that case as well as all of the previously mentioned cases, the lienor's "attempt" to comply was measured, not by his conduct in preparing the certificate, but by the certificate itself. In those cases, the court compared the recorded lien certificate against the statutory requirement. That cannot be said for the majority's analysis in this case.

The majority also asserts that because third parties had constructive notice of the purported lien of the defendant, that constructive notice reasonably satisfied the requirements of § 49-34. The majority relies on the law of mortgages to support this proposition. " '[M]any errors in recording . . . are so neutralized by other matters which do appear in the record, that no searcher after the title possibly could be misled. Obviously, such shortcomings should not affect the validity of the record as notification.' . . . *Connecticut National Bank* v. *Lorenzato,* 221 Conn. 77, 83, 602 A.2d 959 (1992)." The majority further states that "we drew the distinction between the defective execution and the defective recording of a mortgage deed where the 'inadvertent mistake in recordation gave constructive notice to the lien creditor because the properly executed rider was sufficient to put a title searcher on

---

[2] In this connection, in both of the cases cited by the majority in which we rejected claimed deficiencies in the description of the premises liened, there was a certificate lodged with the town clerk that contained a reasonably adequate description of the premises. See *Burque* v. *Naugatuck Lumber Co.,* 113 Conn. 350, 155 A.2d 414 (1931); *Peck* v. *Brush,* 89 Conn. 554, 94 A. 981 (1915).

inquiry about the status of the mortgage.' '' Such reliance displays a basic misunderstanding of the different statutory schemes governing mortgages and mechanic's liens, and the differences between the two encumbrances.

Simply stated, notice to third parties, constructive or otherwise, is irrelevant to the validity of a mechanic's lien.[3] Because a mechanic's lien will be senior in priority to other encumbrances filed prior to the mechanic's lien, so long as the mechanic has commenced work or begun to furnish materials to the property to be encumbered prior to the recording of the intervening encumbrances, third parties will often not have notice of a subsequent mechanic's lien that will be senior in priority to their own claim. This lack of notice has no bearing on the validity of the mechanic's lien.

Conversely, third parties can have constructive notice of a purported mechanic's lien that is invalid. We have held that failure to append a written recital of the oath administered to the lienor invalidates a duly recorded mechanic's lien. *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 210 Conn. 518. We have also held that the failure to conduct a formal ceremony in connection with the statutory oath invalidates a

---

[3] Constructive notice is relevant to the enforceability of a mortgage against third parties because of the different legal requirements for the creation of an encumbrance against the grantor of a mortgage, and its perfection against third parties. When a mortgage is signed by the grantor and grantee, it is effective to create a security interest in favor of the grantee from the grantor. Recording is not necessary. To perfect the security interest against third parties, the mortgage must be recorded. Conversely, the means of creating a security interest encumbering property of the person for whom the mechanic has performed services or rendered materials, and perfecting that security interest against third parties, under the mechanic's lien statute, is unitary. In order both to create and to perfect a security interest with a mechanic's lien, the certificate of mechanic's lien, with a description of property, must be lodged with the relevant town clerk. Were the mechanic just to execute the lien certificate, he would not have a security interest against either the owner of the property or third parties.

mechanic's lien. *Red Rooster Construction Co.* v. *River Associates, Inc.,* 224 Conn. 563, 579, 620 A.2d 118 (1993). In these two cases, the mechanic's lien was invalid because of its failure to comply with the applicable statutory provisions regarding administering or memorializing an oath. In both cases the mechanic's liens had been duly lodged with the town clerk, and recorded in the relevant land records in accordance with all other statutory requirements, including a description of the property encumbered. Constructive notice to third parties was achieved by these invalid liens. Having required strict adherence to the statutory formality of a written oath, actually administered to the lienor, I see no reason to ignore the statutory requirement of a description of the premises to be encumbered.

Because the majority ignores long-standing precedents of this court, and promulgates a decision that is inconsistent with mechanic's lien jurisprudence and the ordinary rules of statutory construction, I dissent, and would affirm the judgment of the Appellate Court.